**NATIONAL COALITION TO SAVE OUR MALL, et al., Appellants,**

v.

**Gale A. NORTON, in her official capacity as Secretary of the Interior, et al., Appellees.**

**No. 01–5290.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 2001.

Decided Nov. 6, 2001.

William T. Mayton argued the cause for appellants. With him on the pleadings was Andrea C. Ferster.

R. Justin Smith, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the pleadings were Andrew C. Mergen, Patricia L. Weiss and Sean H. Donahue, Attorneys.

Before: SENTELLE and TATEL, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge WILLIAMS.

WILLIAMS, Senior Circuit Judge:

A group of organizations, here collectively called the Coalition, filed suit in October 2000 seeking an injunction against the construction of a proposed World War II Memorial on the National Mall. The defendants were a variety of agencies—the Department of the Interior, the National Parks Service, the Commission of Fine Arts, the National Capital Planning Commission, and the American Battle Monuments Commission—responsible either for the construction of the Memorial or for some link in the chain of permitting and approval. The Coalition asserted that in approving the design and construction of the Memorial, the defendant agencies violated a variety of statutes: the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C), the Commemorative Works Act, 40 U.S.C. § 1001 *et seq.*, the National Historic Preservation Act, 16

U.S.C. § 470f *et seq.*, and the Federal Advisory Committee Act, 5 U.S.C.App. II, § 10(a).

In May 2001, while the case was pending in district court, Congress enacted Public Law No. 107–11, 115 Stat. 19 (2001) (the "Act"), which appears to exempt construction of the Memorial from the possible statutory obstacles and to bar judicial review of agency decisions underlying the construction. The Act's full text is as follows:

Section 1. Approval of World War II Memorial Site and Design.

Notwithstanding any other provision of law, the World War II memorial described in plans approved by the Commission of Fine Arts on July 20, 2000 and November 16, 2000, and selected by the National Capital Planning Commission on September 21, 2000 and December 14, 2000, and in accordance with the special use permit issued by the Secretary of the Interior on January 23, 2001, and numbered NCR–NACC–5700–0103, shall be constructed expeditiously at the dedicated Rainbow Pool site in the District of Columbia in a manner consistent with such plans and permits, subject to design modifications, if any, approved in accordance with applicable laws and regulations.

Sec. 2. Application of Commemorative Works Act.

Elements of the memorial design and construction not approved as of the date of enactment of this Act shall be considered and approved in accordance with the requirements of the Commemorative Works Act (40 U.S.C. 1001 et seq.).

Sec. 3. Judicial Review.

The decision to locate the memorial at the Rainbow Pool site in the District of Columbia and the actions by the Commission of Fine Arts on July 20, 2000 and November 16, 2000, the actions by the National Capital Planning Commission on September 21, 2000 and December 14, 2000, and the issuance of the special use permit identified in section 1 shall not be subject to judicial review.

Pub.L. No. 107–11. In passing the statute, Congress acted on its October 2000 resolution to ensure that "the completed memorial will be dedicated while Americans of the World War II generation are alive." S. Con. Res. 145, 106th Cong. (2000); see also Declaration of William B. Owenby, Director of Procurement and Contracting, American Battle Monuments Commission ¶ 2 (Aug. 27, 2001) ("Of the sixteen million citizens who served in uniform during World War II only five million are alive today and these veterans are dying at the rate of approximately 1,100 per day.").

The district court dismissed the action, explaining that it lacked subject matter jurisdiction. *National Coalition to Save Our Mall v. Norton*, 161 F.Supp.2d 14 (D.D.C. 2001). On appeal the Coalition argues that the statute did not effect such a broad exemption for the Memorial, and that, if its language really did so, it encroached on the powers of the federal courts in violation of the separation of powers principles of Article III.

We find that the Act withdrew our subject matter jurisdiction over the statutory claims, and therefore that we lack jurisdiction to entertain them. We further find that it does not violate Article III.

\* \* \*

█ The Coalition first contends that the strong presumption for judicial review of agency decisions, see, e.g., *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), requires us to read the Act as not precluding judicial review of the statutory claims.

■ But the presumption is only that, and can be overridden by specific language or by clear and convincing evidence of legislative intent. *Id.* at 671–73, 106 S.Ct. 2133. It is hard to see how Congress could make it clearer than it has here, providing that "[t]he decision to locate the memorial at the Rainbow Pool site[,] ... the actions [of the Agencies,] ... and the issuance of the special use permit ... shall not be subject to judicial review." Pub.L. No. 107–11, § 3.

■ Section 3's preclusion of review of the relevant agency decisions, moreover, tracks § 1's direction that the Memorial described in those decisions be "constructed expeditiously" in accordance with the named permits, "[n]otwithstanding any other provision of law." On its face, the phrase demonstrates Congress's clear intent to go ahead with the Memorial as planned, regardless of the planning's relation to pre-existing general legislation. This would be clear even if we disregarded the classical but sometimes forgotten purpose of such a *non obstante* clause, namely, to prevent courts from struggling to harmonize a statute with prior ones in the name of the presumption against implied repeal. See Caleb Nelson, "Preemption," 86 Va. L.Rev. 225, 237–42 (2000).

To counter the language of the Act, the Coalition relies chiefly on *D.C. Federation of Civic Associations v. Volpe*, 434 F.2d 436 (D.C.Cir.1970). There we held that a bridge construction project of the Department of Transportation remained subject to pre-existing law despite a statute directing its construction "[n]otwithstanding any other provision of law, or any court decision or administrative action to the contrary." *Id.* at 437–38. But as we stressed in *D.C. Federation,* the statute had a savings clause providing that "[s]uch construction ... shall be carried out in accordance with all applicable provisions of title 23 of the United States Code." *Id.* at 437–

38. We found that this left the construction subject to claims based on that title. *Id.* at 447. Public Law No. 107–11, in contrast, contains savings clauses directed entirely to changes in design or planning that might *follow* the specified approvals and permits: "design *modifications*" (§ 1) (emphasis added), and "[e]lements ... not approved as of the date of enactment" (§ 2).

Both the language of § 3, the Act's purpose as shown in § 1, and its overall structure evince an unequivocal intent to cut off judicial review of all the defendant agencies' past actions regarding the Memorial. Barring some constitutional infirmity, we lack jurisdiction over the Coalition's statutory claims.

The Coalition contends that if the Act's language withdrew jurisdiction over their statutory claims, then it infringes on judicial power under Article III. We find no such infringement.

■ First we note that the Act does not purport to bar our consideration of its own constitutionality. See *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 98–101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (holding that, absent special circumstances, a court may not reach a merits issue without having first found that it has jurisdiction). Here, § 3 withdraws jurisdiction only over the "decision to locate the memorial" and "the actions by [various agencies]." Thus, just as Congress's withdrawal of jurisdiction over "decision[s]" of the Veterans' Administration left the courts free to adjudicate constitutional claims against the VA's enabling statute, *Johnson v. Robison,* 415 U.S. 361, 366–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), so the Act here does not touch our jurisdiction over its own constitutionality.

■ The Coalition argues that § 3 violates the principles in *United States v.*

*Klein,* 13 Wall. 128, 80 U.S. 128, 20 L.Ed. 519 (1871). That decision dealt with a suit for the proceeds of property seized and sold by the army in the Civil War. The administrator of the deceased prior owner's estate sued under legislation allowing recovery by such owners under proof of loyalty, which the Supreme Court had held was satisfied by receipt of a presidential pardon. After the plaintiff recovered in the Court of Claims, Congress passed another statute, denying such pardons any effect in showing loyalty and providing that acceptance without protest of a pardon referring to the recipient's participation in the rebellion would affirmatively prove *dis*loyalty. Congress further directed that on proof of such a pardon or its acceptance, the Court of Claims and Supreme Court should dismiss the suit for want of jurisdiction. *Id.* at 141–44. The Supreme Court found the purported limit on its jurisdiction invalid and ineffective.

*Klein*'s exact meaning is far from clear. One sure precept is that a statute's use of the language of jurisdiction cannot operate as a talisman that *ipso facto* sweeps aside every possible constitutional objection. Richard H. Fallon, Daniel J. Meltzer & David L. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 368 (4th ed.1996). In *Klein* itself, the Court noted that the statute was "liable to just exception as impairing the effect of a pardon, and thus infringing the constitutional Power of the Executive." *Klein,* 80 U.S. at 147. As the Coalition poses no constitutional objection to the substance of Public Law No. 107–11, this element of *Klein* is of no concern.

There remains the following language of *Klein*:

It is evident from this statement that the denial of jurisdiction to this court, as well as to the Court of Claims, is founded solely on the application of a rule of decision, in causes pending, prescribed by Congress. The court has jurisdiction of the cause to a given point; but when it ascertains that a certain state of things exists, its jurisdiction is to cease and it is required to dismiss the cause for want of jurisdiction.

It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power.

*Id.* at 146; see also *id.* at 147 ("Can [Congress] prescribe a rule in conformity with which the court must deny to itself the jurisdiction thus conferred, because and only because its decision, in accordance with settled law, must be adverse to the government and favorable to the suitor? This question seems to us to answer itself.").

These passages cannot be read as a prohibition against Congress's changing the rule of decision in a pending case, or (more narrowly) changing the rule to assure a pro-government outcome. *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), while holding that Congress may not legislate to require federal courts to *reopen* suits for money damages after final judgment, *id.* at 240, 115 S.Ct. 1447, distinguished between pending cases and final judgments, saying that "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly," *id.* at 226, 115 S.Ct. 1447 (citing *United States v. Schooner Peggy,* 1 Cranch 103, 5 U.S. 103, 2 L.Ed. 49 (1801)). A further distinction to the advantage of Public Law No. 107–11 is between damage awards and injunctions. *Miller v. French,* 530 U.S. 327, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000), held that although an injunction may be a final judg-

ment for purposes of appeal, it is not the "last word of the judicial department" because any provision of prospective relief "is subject to the continuing supervisory jurisdiction of the court, and therefore may be altered according to subsequent changes in the law." *Id.* at 347, 120 S.Ct. 2246; see also *Pennsylvania v. Wheeling and Belmont Bridge,* 59 U.S. 421, 18 How. 421, 15 L.Ed. 435 (1855) (upholding a statute declaring as lawful a bridge that had been previously adjudicated as an unlawful obstruction of navigation). If Congress has the power to impose new standards for final judgments in the form of injunctions, it must have the power to impose new substantive rules on suits such as the Coalition's, which sought injunctive relief and had not been resolved on the merits when Congress acted.

Further, to the extent that *Klein* can be read as saying that Congress may not direct the outcome in a pending case without amending the substantive law, a proposition on which we express no view, Public Law No. 107–11 presents no more difficulty than the statute upheld in *Robertson v. Seattle Audubon Society,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992), as Public Law No. 107–11 similarly amends the applicable substantive law. See *id.* at 441, 112 S.Ct. 1407.

Finally, the Coalition suggests that Public Law No. 107–11 is too "narrow," as it affects only the Memorial. In making this argument, the Coalition cites a passage in *Seattle Audubon* in which the Court refused to address the belatedly raised claim that "a change in law, prospectively applied, would be unconstitutional if the change swept no more broadly, or little more broadly, than the range of applications at issue in the pending cases." *Id.* There Congress had responded to ongoing spotted-owl litigation relating to 13 national forests with legislation directing that the various statutes invoked against forestry

decisions on the specified areas must be deemed satisfied by compliance with the new statute's provisions. *Id.* at 433–35 & nn. 1–2, 440, 112 S.Ct. 1407. Here too Congress's direction addresses a specific problem, namely, whether specified government decisions about the Memorial complied with prior general legislation.

We find the level of specificity to be unobjectionable. There is no independent objection that this Memorial-specific legislation violates some substantive constitutional provision limiting Congress's power to address a specific problem, such as the ban on Bills of Attainder or (in some instances) the Equal Protection clause. Indeed, the Coalition at oral argument conceded that the legislation would be constitutional had it been passed prior to their bringing suit. In view of *Plaut, Miller v. French* and *Wheeling Bridge,* we see no reason why the specificity should suddenly become fatal merely because there happened to be a pending lawsuit. This seems particularly sound where Congress is addressing a unique public amenity (or disamenity, depending on one's viewpoint), such as the Memorial or the bridge at issue in *Wheeling Bridge.*

\* \* \*

The judgment of the district court is

*Affirmed.*