Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued  October  10,  2003        Decided  January  13,  2004

No. 02-5304

ROBERT HARRIS, *ET AL.*,
APPELLANTS

v.

FEDERAL AVIATION ADMINISTRATION AND
JANE F. GARVEY, ADMINISTRATOR OF THE
FEDERAL AVIATION ADMINISTRATION,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00503)

————

*David M. Glanstein* argued the cause for the appellants. *Joel C. Glanstein* was on brief.

*Edith M. Shine*, Assistant United States Attorney, argued the cause for the appellees. *Roscoe C. Howard, Jr.*, United

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

Before: HENDERSON, TATEL and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: In 1981, most of the air traffic controllers who were members of the Professional Air Traffic Controllers Organization (PATCO) illegally went on strike from their jobs with the Federal Aviation Administration (FAA). *See* 5 U.S.C. § 7311(3). President Reagan responded by firing those who refused to return to work and banned them from future FAA employment. Twelve years later, in August 1993, the ban was lifted. Pursuant to that directive, the FAA published Recruitment Notice 93–01 (Recruitment Notice or Notice). The Notice provided an avenue for former PATCO controllers to apply to work at the FAA and specified a GS–9 grade-level, with that grade level's corresponding salary range, for any hirees.

Robert Harris and the other 171 appellants are former PATCO controllers who were hired by the FAA pursuant to the Recruitment Notice. In 2001, they filed suit under the Administrative Procedure Act (APA), 5 U.S.C. § 704, claiming that the FAA's decision to hire them at the GS–9 level and corresponding salary range – as opposed to their prior, pre-termination grade-levels and corresponding salary ranges – was arbitrary and capricious. The district court dismissed their case for lack of subject matter jurisdiction, concluding that they had failed to bring their claim within the six-year statute of limitations set forth in 28 U.S.C. § 2401(a). In doing so, the district court found that the Recruitment Notice constituted "final agency action" for the purpose of the appellants' APA claim and that their case would have been ripe for review when the Notice was published in 1993. The appellants contend that the district court erred on both grounds. We disagree and affirm.

## I. BACKGROUND

On August 3, 1981, after several months of negotiation and years of disputes with the FAA, several thousand air traffic controllers who were members of the PATCO went on strike from their jobs with the federal government. In response, President Reagan demanded that they return to work within 48 hours or risk losing their jobs. Over 11,000 controllers refused to do so, so President Reagan fired them and banned them from returning to work at the FAA. More than twelve years later, on August 12, 1993, the lifetime ban was lifted. Shortly thereafter, the FAA issued the Recruitment Notice.

The Notice formally alerted former PATCO controllers that they were eligible for "reinstatement" at the FAA and provided them a specific avenue to apply. J.A. 53. Controller positions, the Notice stated, would be filled as vacancies occurred and, although the FAA expected to add only a few controllers from various sources over the next few years,[1] by the Notice it was "establishing an inventory of applicants who have reinstatement and transfer eligibility." *Id.* According to the Notice, applicants would be initially hired at the GS–9 grade level, with a corresponding salary of between $27,789 and $36,123. Internal FAA documents explained that hiring would take place at the GS–9 level because the former PATCO controllers would need modified training to learn new air traffic control systems; they further explained that a controller's salary within that range would be based on his penultimate salary at the time he was fired. "Advancement above [the] GS–9 [grade level]," the Notice declared, would "be based upon successful completion of training and/or certi-

[1] The Notice was not the only avenue by which a former PATCO controller could return to the FAA. Regional FAA offices also published their own recruitment notices, which established their own particular salary ranges. Similarly, at least as early as 1985, former PATCO controllers could apply for employment at certain Department of Defense (DOD) facilities, proceed through DOD pay scales, and (after the 1993 directive) transfer to the FAA and retain their equivalent DOD grade level and corresponding salary. J.A. 25–27, 157.

fication requirements for the next higher grade and applicable time-in-grade requirements." *Id.*

The appellants are 172 current and retired former PATCO controllers who were hired by the FAA between 1995 and 1998 pursuant to the Recruitment Notice.[2] In 2001, they brought suit under the APA "to challenge as arbitrary and capricious the FAA's decision to disregard [their] prior highest pay grades and performance steps upon their reemployment with the FAA from 1995 to 1998." Appellants' Br. at 3. They claim that the FAA should have hired them at their prior, pre-termination grade[3] – and at the appropriate accompanying salary – and not at the GS–9 level and at a salary within its range.

In the district court, the FAA moved to dismiss the case on the grounds that the appellants' claims were time barred, that they had failed to exhaust their administrative remedies and that they had failed to state a claim. Concluding that the Recruitment Notice constituted the final agency action under the APA, the court held that the appellants did not meet the six-year statute of limitations because their claims were not filed until 2001. The court also rejected the appellants' claim that their claims did not become ripe for review until the FAA hired them beginning in 1995, believing that their APA claim was ripe for review in 1993.

On appeal, the appellants argue that the district court erred in two ways. First, they claim that the Recruitment Notice could not constitute final agency action because the FAA's hiring process was incomplete and because the Notice had no immediate impact on them until they were hired. Second, they renew their claim that even if the Notice was a

[2] As the district court noted, the Notice was undated but stated that it was "open" for six weeks only – from September 1, 1993 to October 15, 1993. *Id.* The appellants do not contest the fact that they applied for employment at the FAA pursuant to the Notice during that time frame.

[3] At least one of the appellants was at the GS–14 grade level when he was fired and if hired at that level would have received a significantly greater salary. J.A. 241.

final agency action, the APA's statute of limitations did not, and could not, begin to run until their claim became ripe for judicial review, which they contend was not until they were hired beginning in 1995. The FAA counters that the district court's conclusions were correct, but that even if they were not, this court should affirm the dismissal on other grounds, including: (1) the appellants failed to show that they were aggrieved; (2) they had alternative remedies and thus no cause of action under the APA; (3) they failed to exhaust their alternative administrative remedies; and (4) they failed to show that the FAA's decision to hire former PATCO controllers at the GS–9 level as opposed to their prior grade levels was arbitrary or capricious.

## II.  DISCUSSION

Section 704 of the APA provides for judicial review of "final agency action." 5 U.S.C. § 704. Unless another statute prescribes otherwise, a suit challenging final agency action pursuant to section 704 must be commenced within six years after the right of action first accrues. 28 U.S.C. § 2401(a);[4] *Sendra Corp. v. Magaw*, 111 F.3d 162, 165 (D.C. Cir. 1997). The right of action first accrues on the date of the final agency action. *Id.*; *see Impro Prods., Inc. v. Block*, 722 F.2d 845, 850–51 (D.C. Cir. 1983) ("In this case, where no formal review procedures existed, the cause of action accrued when the agency action occurred.").

The appellants first contend that the district court erred because the Recruitment Notice did not constitute final agency action. The United States Supreme Court explained in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), that:

> [a]s a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process, *Chicago & Southern Air Lines,*

---

[4] "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

*Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) – it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow," *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970).

*See Domestic Secs., Inc. v. SEC*, 333 F.3d 239, 246 (D.C. Cir. 2003). The appellants contend that the Recruitment Notice fails on both counts. With regard to the first condition, they make two arguments. First, relying on *Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001), they claim that the Notice manifested only the FAA's future intent to hire former PATCO controllers. Second, they contend that the FAA was still formulating its hiring process with regard to former PATCO controllers after publication of the Notice and that the FAA subsequently modified its policies in 1996 when it allowed former PATCO controllers who were employed by DOD to transfer to the FAA and maintain their DOD grade levels.

Neither argument holds water. In *Fourth Branch Assocs.*, we rejected the petitioner's argument that FERC's decision to *initiate* a surrender proceeding – in which FERC explicitly stated that it had made "no final decision" regarding the outcome of the proceeding – constituted a final agency action. 253 F.3d at 746. In contrast, while the Notice here qualified the date, if ever, on which a former PATCO controller might be hired – stating that "the FAA expects to fill only a small number of [controller] positions from a variety of sources over the next few years," that "employment opportunities are limited" and that it was therefore "establishing an inventory of applicants who have reinstatement and transfer eligibility," J.A. 53 – it stated categorically that, when such hiring occurred pursuant to the Notice, it would be at the GS–9 grade level and at a corresponding salary.[5] That declaration consti-

---

[5] Indeed, the Notice explained that "[a]dvancement above GS–9" would be available to applicants – who after all had not served as controllers for 12 years – "based upon successful completion of

tutes an "unequivocal statement of the agency's position" sufficient to meet the first requisite for final agency action. *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 734 (D.C. Cir. 2003).

The appellants also claim that, even if the Notice itself was initially definitive with regard to the grade level and salary of former PATCO controllers hired pursuant to it, the FAA modified its hiring policy after the Notice's publication. We have previously observed that "[i]f for any reason the agency reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable on its merits, even though the agency merely reaffirms its original decision." *Sendra Corp.*, 111 F.3d at 167. Here, however, the evidence to which the appellants point for support does not indicate that the FAA in any way altered or reconsidered its decision regarding the grade and salary of those former PATCO controllers hired pursuant to the Recruitment Notice. FAA Order 3300.30, which issued on December 22, 1993, makes clear that any former PATCO controller applying pursuant to the Notice would not be hired at the grade level he held before the strike; rather it confirms the Notice by stating that such hiree would initially be paid at the GS–9 grade level at a salary corresponding as closely as possible to his penultimate, pre-termination salary. J.A. 60. Furthermore, the fact that some former PATCO controllers who worked as controllers at DOD in 1996 and who subsequently transferred to the FAA (but not pursuant to the Notice) were able to maintain their then-current grade level does not mean that the FAA altered the Notice's offer to hire at the GS–9 level former PATCO controllers who required retraining. Indeed, that the FAA continued to hire the appellants through 1998 at the GS–9 level pursuant to the Notice manifests that the FAA continued to enforce it as written.

The appellants next claim that the district court erred in concluding the Notice constituted final agency action because it had no "immediate impact or direct legal consequences" on

---

training and/or certification requirements for the next higher grade." *Id.*

any former controllers until they were in fact hired by the FAA. Appellants' Br. at 12. The test for finality, however, is not so narrow – it is met if "the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett,* 520 U.S. at 178 (quotations and citations omitted); *see Reliable Automatic Sprinkler*, 324 F.3d at 731 ("Agency action is considered final to the extent it imposes an obligation, denies a right, or fixes some legal relationship." (citing *Role Models Am., Inc. v. White*, 317 F.3d 327, 331–32 (D.C. Cir. 2003))). As the district court observed, the Notice constituted the FAA's formal offer of employment to hire former PATCO controllers at the GS–9 level, an offer which the appellants accepted pursuant to its terms by applying during the *1993* six-week period. The hiring of the appellants from 1995 to 1998 at the GS–9 level simply implemented the FAA's decision which was made in 1993 and spelled out in the Notice. *See Impro Prods.,* 722 F.2d at 850 (agency's renewal of earlier decision – periodic redistribution of reprints of articles allegedly containing false information – did not restart statute of limitations).

The appellants alternatively contend that, even if the Notice constituted final agency action, the district court erred in dismissing their law suit because the six-year statute of limitations did not begin to run until after they were hired. Had they brought their claim in 1993, the appellants contend, the district court would have dismissed their case for lack of ripeness. We have declined previously to consider an after-the-fact invocation of the ripeness doctrine to defeat a statute of limitations, although not in the context of an APA claim. *See, e.g., Eagle–Picher Indus., Inc. v. EPA*, 759 F.2d 905, 912–14 (D.C. Cir. 1985) (CERCLA claim brought too late to meet ninety-day statute of limitations and petitioner's ripeness argument rejected). Nevertheless, we believe that the appellants' claim *was* ripe for review in 1993.

The ripeness inquiry requires a court to look both to "the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other*

*grounds*, *Califano v. Sanders*, 430 U.S. 99, 105 (1977); *see Sprint Corp. v. FCC*, 331 F.3d 952, 956–58 (D.C. Cir. 2003). "In determining the fitness of an issue for judicial review we look to see whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1204 (D.C. Cir.1998) (internal quotation omitted). We have already determined that the Recruitment Notice constituted final agency action; nevertheless the appellants argue that their case was not ripe for judicial review until they were hired because the FAA's decision was not sufficiently crystallized and because they had not yet suffered any "direct hardship." Appellants' Br. at 19. As we explained in *Sprint Corp.*, however, "the question of whether an agency decision is arbitrary and capricious is a purely legal question," and "[f]itness ... is more likely to be found where 'the issue tendered is a purely legal one.'" 331 F.3d at 956 (quoting *Abbott Labs.*, 387 U.S. at 149, citing *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1039 (D.C. Cir.), *opinion modified on reh'g on other grounds*, 293 F.3d 537 (D.C. Cir. 2002)); *see Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 49 (D.C. Cir. 2000) (case ripe for judicial review where "questions presented are purely legal" and "[n]othing ... would bring the issues into greater focus or assist in determining them"). The "prospect" of hardship is sufficient to make a claim fit for judicial review. *Id.* Moreover, the focus of the second prong of the ripeness inquiry – "hardship" to the parties from withholding review – is not whether they have suffered any "direct hardship," but rather whether *postponing* judicial review would impose an undue burden on them or would benefit the court. *AT&T v. FCC*, 349 F.3d 692, 700, 702 (D.C. Cir. 2003) (explaining that "'hardship prong'" considers "potential hardship of delay on the [petitioner]" only if court finds important agency interests and rejecting petitioner's challenge as unripe because "both the agency and the court would benefit from postponing review" and petitioner failed to show that postponing review would cause it

hardship); *see Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (ripeness *vel non* weighs "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented"). Accordingly, because the Notice sufficiently affected their legal rights as well as the obligations of the FAA and because there was no reason to postpone judicial review, the appellants' claim was ripe in 1993.

Our recent decision in *Norwest Bank Minnesota National Association v. FDIC*, 312 F.3d 447 (D.C. Cir. 2002), also supports affirmance. In *Norwest*, we considered whether the FDIC's 1992 interpretation applying a statutory amendment to the calculation of banking insurance premiums triggered 12 U.S.C. 1817(g)'s five-year statute of limitations. *See id.* at 449–50. Rejecting the bank's claim that it could not have challenged the agency's interpretation until 1995, at which time the FDIC's interpretation imposed a financial burden on the bank itself, we concluded that "it has long been settled that statutes of limitations begin running *when the wrong has been committed*, even if at the time no more than nominal damages may be proved, and no more recovered." *Id.* at 452 (emphasis added) (internal quotation omitted).[6] Just as the FDIC's 1992 interpretation constituted final agency action for the purpose of the bank's challenge – even if the FDIC's interpretation did not financially harm the bank until some years later – so too did the 1993 Recruitment Notice, which likewise determined the appellants' future salaries – notwithstanding their pocketbooks did not feel it until years later– constitute final agency action for the purpose of the appellants' APA claim here. *Norwest*, 312 F.3d at 451–52.

---

[6] We noted that "[o]ne of the policies underlying the statute of limitations is repose[,]" concluding that if the statute of limitations did not begin to run until FDIC's interpretation caused financial harm to Norwest, "FDIC's books would never close." *Id.* at 452 (citing *3M Co. v. Browner*, 17 F.3d 1453, 1457 (D.C. Cir. 1994)).

11

For the foregoing reasons, the judgment of the district court is affirmed.[7]

*So ordered.*

---

[7] The district court dismissed the suit pursuant to Fed. R. Civ. P. 12(b)(1). We have previously declared that section 2401(a), "[u]nlike an ordinary statute of limitations, . . . is a jurisdictional condition attached to the government's waiver of sovereign immunity," *Spannaus v. United States Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987). Nevertheless, after the Supreme Court in *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 95–96 (1990), rejected the Fifth Circuit's jurisdictional reading of Title VII's similar filing deadline and instead held that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States," we recently expressed doubt about the jurisdictional nature of an analogous statute of limitations. *See Chung v. United States Dep't of Justice*, 333 F.3d 273, 277 (D.C. Cir. 2003) (rejecting jurisdictional nature of Privacy Act statute of limitations in light of *Irwin*); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination . . . is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"); *Leavell v. Kieffer*, 189 F.3d 492, 494–95 (7th Cir. 1999) (statute of limitations not jurisdictional but instead affirmative defense). The parties have not questioned the district court's dismissal pursuant to 12(b)(1), and, given our disposition, we need not determine whether the dismissal should have been pursuant to 12(b)(1) or 12(b)(6).