Guillermo **BERRIOCHOA LOPEZ,** et al.  Plaintiffs,

v.

**UNITED STATES of America,** et al.  Defendants.

No.  CIV.A.02–2489.

United States District Court, District of Columbia.

March 23, 2004.

Barry Nace, Paulson & Nace, Washington, DC, for Plaintiffs.

---

5.  An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

Peter Blumberg, Washington, DC, for Defendants.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

### I. Introduction

Plaintiffs, Mexican citizens who own or have an interest in Mexican trucking companies, bring this suit against the United States, several government agencies, and former high-ranking government officials, including President William J. Clinton, Secretary of Transportation Federico Peña, and other Department of Transportation officials. Plaintiffs, who also seek to certify a class pursuant to Fed.R.Civ.P. 23,[1] bring tort claims under the Federal Tort Claims Act ("FTCA"), the Alien Tort Claims Act ("ATCA"), and various constitutional torts claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] Defendants filed a Motion to Dismiss under Fed. R.Civ.P. 12(b)(1) and 12(b)(6).[3]

### II. Legal Background

Plaintiffs' suit arises from the conflict between the North American Free Trade Agreement ("NAFTA") and certain domestic legislation barring Mexican citizens from gaining permission to operate as motor carriers in the United States.

In 1982, Congress passed the Bus Regulatory Reform Act, creating a moratorium on the Interstate Commerce Commission's ("ICC") issuance of new motor carrier operating authority to foreign carriers. Pub.L. No. 97–261, § 6(g), 96 Stat. 1102, 1107–08 (1982). Later that year, the President signed a memorandum excluding Canada from the prohibition and declaring explicitly that the moratorium would be enforced against Mexico. The President and his successors extended the moratorium in the subsequent years of 1984, 1986, 1988, 1990, 1992, and 1995.[4]

---

1. The Court shall decide defendants' Motion to Dismiss without reaching the issue of class certification. *See Curtin v. United Airlines, Inc.*, 275 F.3d 88, 92–93 (D.C.Cir.2001) (holding that district court did not abuse its discretion in granting defendant's motion for summary judgment where the merits of plaintiff's claim could be readily resolved); *see also Kas v. Financial General Bankshares, Inc.* 796 F.2d 508, 510 (D.C.Cir.1986) (noting that district court properly dismissed case under Fed. R.Civ.P. 12(b)(6) and that reviewing court need not reach appellants' contention that court erred in refusing to certify a class under Fed.R.Civ.P. 23).

2. In their opposition to defendants' Motion to Dismiss, plaintiffs allege violations of 42 U.S.C. § 1981 and the D.C. Human Rights Act. Pls.' Opp'n. at 34. Because plaintiffs did not raise these allegations in their complaint and, as of March 23, 2004, have not filed an amended complaint, the Court will not consider them.

3. As a preliminary matter, the Court notes that plaintiffs filed almost an identical suit under *Bivens* and 42 U.S.C. § 1981 against the current Secretary of Transportation, among others, in the U.S. District Court for the Southern District of Texas. *Berriochoa-Lopez v. Mineta*, Civ. A. No. B–01–208 (S.D.Tex. Jan. 13, 2003). There, the Magistrate Judge found subject matter jurisdiction because plaintiffs were alleging violations of a federal statute and the Equal Protection component of the Fifth Amendment (as part of their *Bivens* action). However, the Magistrate Judge recommended that the case be dismissed for lack of personal jurisdiction over the defendants. The district court adopted the Magistrate Judge's report and granted the defendants' Motion to Dismiss. The plaintiffs' appeal is still pending before the Court of Appeals for the Fifth Circuit (Case No. 03–40350).

4. *See* 60 Fed.Reg. 12,393 (Mar. 2, 1995); 57 Fed.Reg. 44,647 (Sept. 25, 1992); 55 Fed. Reg. 38,657 (Sept. 17, 1990); 53 Fed.Reg. 36,430 (Sept. 15, 1988); 51 Fed.Reg. 34,079 (Sept. 23, 1986); and 49 Fed.Reg. 35,001 (Aug. 30, 1984).

In 1995, Congress passed the ICC Termination Act, which transferred motor carrier operating authority responsibilities to the Department of Transportation ("DOT"). Pub.L. No. 104–88, §§ 103–104, 109 Stat. 803 (1995) (codified as amended at 49 U.S.C. § 13501 (2000)). The Act extended the validity of existing regulations, including the 1982 Bus Regulatory Reform Act, but gave DOT the power to modify or eliminate the existing moratorium. *See* 49 U.S.C. § 13902(c)(4)(B)(2000).

By that time, however, the United States had already entered into NAFTA, which was signed by the three nations on December 18, 1992, and took effect January 1, 1994. In Annex I of NAFTA, the parties agreed that Mexican nationals would be permitted to obtain operating authority to provide cross-border trucking services in four border states three years after the signing of the agreement (December 18, 1995) and that Mexican nationals would be authorized to operate throughout the United States six years after the treaty signing (January 1, 2000). Additionally, Annex I provided that foreign nationals, specifically Mexicans, would be able to invest in U.S.-domiciled trucking companies as of December 18, 1995 (three years after the treaty was signed).

Since at least 1995, the United States government has been and remains incapable of agreeing on unified medical, vehicular, and safety compliance standards under NAFTA. The United States announced that it would accept Mexican applications for operating authority, but no applications—including the 184 applications submitted since July 20, 1999—have been approved since the moratorium went into effect. The United States maintains the moratorium by requiring applicants to indicate on the standard forms whether they are Mexican nationals. *See* 49 C.F.R. § 1182.2(a)(10)(2000). The United States also maintains a complete ban on Mexican nationals' owning or controlling U.S. cargo and passenger motor carrier service providers.

In 1998, Mexico formally requested, under the dispute resolution mechanism of NAFTA, the formation of an arbitral panel to decide whether the U.S. restrictions of cross-border trucking operations and investment violated the terms of NAFTA. All three signatories to the treaty participated in the hearings, and the panel issued its final report in February 2001. *In the Matter of Cross Border Trucking Services,* Secretariat File No. USA–MEX–98–2008–01 (Feb. 6, 2001), *available at* http:// dmses.dot.gov/docimages/pdf63/128100_ web.pdf (last visited March 23, 2004). The Arbitral Panel found that the United States' fears over Mexican compliance with relevant standards were an insufficient reason to refuse to comply with the provisions of Annex I but that the United States was not required to treat Mexican companies and individuals the same as those from the United States and Canada when disparate treatment served the purpose of promoting compliance with established rules. Nevertheless, the panel found that no application from a Mexican national had been or would be approved. *Id.* at ¶¶ 295–298.

The United States concedes that its policies violated Annex I of NAFTA but notes in its Motion to Dismiss that, since the panel issued its report, the Government has taken steps to ameliorate the situation, including lifting the ban on the issuance of operating permits to motor carriers domiciled in the United States but owned or controlled by Mexican nationals. In addition, the United States has taken measures that signal a further loosening of the moratorium, but those measures have been

temporarily halted, by a challenge in the Ninth Circuit unrelated to this lawsuit.[5]

### III. Discussion

#### A. NAFTA Implementation Legislation

The United States signed NAFTA with the heads of state of Canada and Mexico on December 18, 1992. President Clinton submitted the Agreement to Congress the following year, and Congress passed comprehensive legislation to enact the Agreement into law. North American Free Trade Agreement Implementation Act, Pub.L. No. 103–82, 107 Stat.2057 (1993) (codified as amended at 19 U.S.C. §§ 3301–3473 (2000)).

Chapter Twenty of the Implementation Act, "Institutional Arrangements and Dispute Settlement Procedures," establishes a comprehensive, three level process for consideration and review of issues over which the party states disagree. *See* 1993 WL 561199 at *1 (N.A.F.T.A.). The process begins with consultations between the affected countries. *Id.* at *2. In the United States, if the parties cannot resolve the matter, the issue goes before the Federal Trade Commission ("FTC"). *Id.* The parties can then request the formation of an independent panel, much like Mexico has done here, that is responsible for factfinding and for issuing initial and final reports. *Id.* If, after the panel's final report, the parties are still unable to agree upon an appropriate remedy, they are required to decide upon "trade compensation for the complaining party." *Id. at *4.* Finally, if no settlement has been reached within thirty days of the final panel report, the aggrieved party can suspend the other party's NAFTA benefits equivalent to those that the panel has concluded were impaired. *Id.*

Outside of this dispute resolution procedure, Congress specifically addressed potential conflicts between NAFTA and existing as well as future federal law. *See* 19 U.S.C. § 3312 (2000). Section 3312(a)(1), bearing the heading "United States law to Prevail in a Conflict," prescribes that "[n]o provision of the Agreement, nor the application of any such provision to any person or circumstance, which is inconsistent with any law of the United States shall have effect." The subsections of the statute that follow identify and review in painstaking detail the construction to be given to NAFTA, the parties who can bring a lawsuit, and the parties who can be sued. For the reasons explained below, these explicit statutory commands divest the Court of jurisdiction and require the dismissal of plaintiffs' lawsuit.

#### B. Subject Matter Jurisdiction

Subject matter jurisdiction is a "threshold matter" in all cases, such that without it, "the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Ex parte McCardle,* 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868)). When jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *McCardle,* 74 U.S. 506, 7 Wall. at 514, 19 L.Ed. 264.

The D.C. Circuit has stated in unequivocal terms that "[j]urisdiction must be established before a federal court may proceed to any other question." *Galvan v. Federal Prison Indus.,* 199 F.3d 461, 463 (D.C.Cir.1999). Consequently, this Court

---

5. *See Public Citizen v. Department of Transp.,* 316 F.3d 1002, 1032 (9th Cir.2003) (holding that DOT failed to conduct proper environmental inquiry before approving lifting of moratorium on Mexican motor carrier operators), *cert. granted,* —— U.S. ——, 124 S.Ct. 957, 157 L.Ed.2d 793 (2003) (No. 03–358).

must determine whether it has subject matter jurisdiction before considering defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim because, rather than challenge this Court's jurisdiction, the latter motion challenges "the legal sufficiency of the complaint." *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C.Cir.2003).[6]

## C. Rule 12(b)(1) Standard

The appropriate standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(1) has been well-established by both the Supreme Court and the D.C. Circuit. As this Court has stated, "a complaint may be dismissed for lack of subject matter jurisdiction only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'" *National Wrestling Coaches Ass'n v. U.S. Dept. of Educ.,* 263 F.Supp.2d 82, 100 (D.D.C.2003) (quoting *Empagran, S.A. v. F. Hoffman–LaRoche, Ltd.,* 315 F.3d 338, 343 (D.C.Cir.2003) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Additionally, the Court "assumes the truth of the allegations made and construes them favorably to the pleader." *Empagran,* 315 F.3d at 343; *see also Artis v. Greenspan,* 158 F.3d 1301, 1305–6 (D.C.Cir.1998) (explaining that the non-moving party "is entitled to all *reasonable* inferences that can be drawn in her favor") (emphasis in original)). And, because a challenge to subject-matter jurisdiction calls into question the Court's power to hear the case, the Court may consider, where necessary, materials outside of the pleadings. *See Teva Pharmaceuticals, USA, Inc., v. U.S. Food and Drug Admin.,* 182 F.3d 1003, 1008 (D.C.Cir.1999); *Artis,* 158 F.3d at 1305–6.

## D. 19 U.S.C. § 3312(c)(2) Acts as a Complete Bar to Private Causes of Action

Plaintiffs make three principal factual allegations: 1) that defendants have refused to process and/or approve their applications for permits to operate within the four border states of California, Arizona, New Mexico, and Texas since December 18, 1995; 2) that defendants have refused to process and/or approve their applications for permits to operate within the entire United States since January 1, 2000; and 3) that defendants have refused to process their applications to invest in, own, or control United States-domiciled trucking firms since December 18, 1995. In acting or failing to act, plaintiffs argue, defendants have not only violated their obligations under NAFTA, but have also committed the intentional torts listed in their complaint,[7] giving this Court subject matter jurisdiction.

In their Motion to Dismiss, defendants argue that plaintiffs' Federal Tort Claims Act claims are: 1) time-barred because they were not filed within two year of date of accrual; 2) time-barred because plain-

---

**6.** Because jurisdiction is a threshold requirement, dismissal for lack of subject matter jurisdiction represents the "best and narrowest ground" on which the Court can resolve this case. *See Air Courier Conference of America v. American Postal Workers Union, AFL–CIO,* 498 U.S. 517, 531, 111 S.Ct. 913, 112 L.Ed.2d 1125 (1991) (Stevens, J., concurring in the judgment) ("Faithful adherence to the doctrine of judicial restraint provides a fully adequate justification for deciding this case on the best and narrowest ground available."); *see also Brown v. Plaut,* 131 F.3d 163, 170 (D.C.Cir.1997) ("We do not think it necessary or even useful to resolve so many complex and fact-specific issues in the context of this case [when] it may be possible to decide on far narrower grounds.").

**7.** Those intentional torts are: Intentional Interference with Prospective Economic Advantage; Intentional Interference with Contractual Relations; Breach of Fiduciary Duty; and Taking of Property without Just Compensation.

tiffs failed to file a complaint within six months of the agency's denial of their claim; 3) barred because there is no state law analog; and 4) precluded by the FTCA's exemptions for intentional and constitutional torts. Defs.' Mot. to Dismiss at 15–22.[8]

Because all of plaintiffs' claims stem from NAFTA violations, 19 U.S.C. § 3312(c) bars the instant suit. Entitled "Effect of Agreement with respect to private remedies," section 3312(c) states, in pertinent part,

> No person other than the United States ... shall have *any* cause of action or defense under the Agreement or by virtue of Congressional approval thereof, or ... may challenge, in *any* action brought under *any* provision of law, *any* action or inaction by *any* department, agency, or other instrumentality of the United States ... on the ground that such action or inaction is inconsistent with the Agreement. (emphasis added).

The statutory prohibition on *any* suits arising from alleged NAFTA violations is explicit and, as a unanimous Supreme Court recently confirmed, "where the words of the statute are unambiguous, the 'judicial inquiry is complete.' " *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 2153, 156 L.Ed.2d 84 (2003) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)); *see Williams v. Taylor,* 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) ("We give the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import.") (quoting *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)). Because the prohibition extends to suits brought "under *any* provision of law," the statute bars all of plaintiffs' claims, both the statutory ones and the *Bivens* action.

When faced with comparably clear statutory language precluding judicial review of agency decisions, the D.C. Circuit has not hesitated to dismiss suits for lack of subject matter jurisdiction. *See National Coalition to Save Our Mall v. Norton,* 269 F.3d 1092, 1095 (D.C.Cir.2001). In *Norton,* a group of organizations filed suit seeking an injunction to halt the construction of a World War II monument on the National Mall. While the suit was pending in the district court, Congress passed a statute that exempted the construction of

---

8. Until recently, the D.C. Circuit treated a statute of limitations defense offered by the U.S. Government as a challenge to the Court's jurisdiction, not as an affirmative defense. *See Harris v. Federal Aviation Administration,* 353 F.3d 1006, 1013 n. 7 (D.C.Cir.2004). However, in *Harris,* the Court of Appeals acknowledged that the Supreme Court's decision in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), had established that the rebuttable presumption in favor of equitable tolling in suits against private actors applied equally to suits against the United States. 353 F.3d at 1013 n. 7.

Moreover, the Court of Appeals cited with approval *Leavell v. Kieffer,* 189 F.3d 492, 494–95 (7th Cir.1999), which it read as holding that the "statute of limitations [is] not jurisdictional but instead [an] affirmative defense." *Harris,* 353 F.3d at 1013 n. 7. In *Leavell,* Judge Easterbrook stated that a *Bivens* claim presents a federal question, giving the district court subject matter jurisdiction under 28 U.S.C. § 1331. The statute of limitations, he said, does not "affect the district court's jurisdiction." *Leavell,* 189 F.3d at 494.

Thus, defendants' argument that equitable tolling applies to suits against the United States only "sparingly" seems foreclosed by both *Harris* and *Chung v. U.S. Department of Justice,* 333 F.3d 273, 276 (D.C.Cir.2003) (holding that presumption in favor of equitable tolling applied to suit against the Department of Justice under the Privacy Act). *See* Reply to Pls.' Opp'n at 17.

the memorial and the agency decisions underlying that construction from judicial review. Pub.L. No. 107–11, § 3, 115 Stat. 19 (2001) ("The decision to locate the memorial at the Rainbow Pool site … and the actions by the Commission[s] … and the issuance of the special use permit … shall not be subject to judicial review."). In affirming the district court's decision to dismiss the suit for lack of subject matter jurisdiction, the Court of Appeals noted that "[i]t [was] hard to see how Congress could make" its intent "clearer that it has here." *Norton*, 269 F.3d at 1095. The Court finds that the language in section 3312 precluding private parties from challenging the state and federal governments' compliance with NAFTA is, if possible, an even clearer expression of Congressional intent than in *Norton.*

The D.C. Circuit's most recent analysis of statutory language intended to preclude judicial review is not to the contrary. *See General Electric Co. v. Environmental Protection Agency*, 360 F.3d 188, 191 (D.C.Cir.2004) (reaffirming that "when the statutory language is straightforward, there is no need to resort to legislative history."). At issue in *General Electric* was a provision of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") that divested the federal courts of jurisdiction to review "any challenges to removal or remedial action selected under section 9604 [of Title 42, United States Code] or to review any order issued under section 9606(a)." 42 U.S.C. § 9613(h) (2000). The district court rejected General Electric's contention that its facial constitutional challenge fell outside the scope of the statutory language and dismissed the case for lack of subject matter jurisdiction. In reversing, the D.C. Circuit emphasized that Congress had "enumerated *only two* types of challenges over which the federal courts lack jurisdiction" and that the apparently broad

"any challenges" language was not "without qualification." *Id.* at 191 (emphasis added).

The language of the NAFTA Implementation Language, in contrast, is decidedly "without qualification." Whereas the provision before the court in *General Electric* limited judicial review of challenges brought under a few specific statutory sections, 19 U.S.C. § 3312(c) precludes suits "brought under *any* provision of law." (emphasis added). The plain language of the NAFTA Implementation Legislation thus requires the dismissal of all suits whose sole claim to legal relief stems from alleged noncompliance with NAFTA by federal or state government officials.

Not surprisingly, two district courts that have recently examined the NAFTA implementation legislation have concluded that the statutory language bars private causes of action arising out of alleged NAFTA violations. *See Leclerc v. Webb*, 270 F.Supp.2d 779, 804 (E.D.La.2003); *see also Friedman v. United States*, 2003 WL 1460525 at \*11 (S.D.N.Y.2003) (observing that the legislation "does not allow for a private right of action against any department or agency of the United States."). In *Leclerc*, a non-immigrant Canadian citizen challenged a Louisiana regulation requiring that all applicants to the state bar be United States citizens or permanent residents. In responding to plaintiff's allegations that the regulation violated NAFTA, defendants argued simply that an adjoining clause of section 3312(c) barred the suit: "No person other than the United States … may challenge, in any action brought under any provision of law, any action or inaction by … any **State** …" The court agreed, dismissing plaintiff's suit on the ground that "NAFTA's enabling legislation expressly limits such a legal challenge to the United States." *Leclerc*, 270 F.Supp.2d at 804.

The language in section 3312(c) addressing challenges to treaty-related actions of the federal government mirrors the language that refers to actions by state governments. This Court has no reason to depart from the plain language of the statute to infer a cause of action where one is plainly prohibited.

In their Opposition to defendants' Motion to Dismiss, plaintiffs dedicate a scant two paragraphs to defendants' powerful statutory argument. Oddly, plaintiffs claim that they are not seeking "to enforce or implement NAFTA," but that they are instead attempting to "remedy the wrongs of the Defendants" through a mandamus action. Pls.' Opp'n at 17. The complaint, however, is based strictly in tort and makes no mention of a mandamus remedy. Compl. at 21. Outside of individual rights arguments, complete with citations to a James Madison speech to Congress and to *Marbury v. Madison*, plaintiffs fail to present any compelling reason for the Court to ignore the plain language of the NAFTA implementation legislation.

### IV. Conclusion

As demonstrated by the parties' comprehensive submissions, this case presents compelling issues, at least one of which is of first impression in this Circuit. However, the importance of those issues does not relieve the Court of its initial duty to assure itself that it has jurisdiction over the matter. Because this Court lacks jurisdiction to hear this case, the present action must be dismissed.

An appropriate Order accompanies this Opinion.