**SIERRA CLUB, Appellant,**

v.

**DELAWARE DEPARTMENT OF NATURAL RESOURCES AND ENVIRONMENTAL CONTROL, a Delaware agency, John Hughes, in his official capacity as Secretary, Delaware Department of Natural Resources and Environmental Control,**

a **Delaware agency, and David Small, in his official capacity as Deputy Secretary, Delaware Department of Natural Resources and Environmental Control, a Delaware agency, Appellees.**

No. 379, 2006.

Supreme Court of Delaware.

Submitted: Feb. 14, 2007.
Decided: March 9, 2007.

Albert M. Greto, Esquire and Kenneth T. Kristl, Esquire (argued), Wilmington, Delaware, for appellant.

Robert F. Phillips, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices, and VAUGHN, President Judge.[1]

HOLLAND, Justice, for the majority.

This is an appeal from the Court of Chancery's June 19, 2006, ruling granting summary judgment to the appellees, Delaware Department of Natural Resources and Environmental Control ("DNREC"), John A. Hughes, Secretary of DNREC, and David Small, Deputy Secretary of DNREC on appellant, Sierra Club's request for permanent injunctive relief. Sierra Club's lawsuit sought to bar the appellees from conducting dredging operations in the Assawoman Canal until they complied with the Environmental Appeal Board's ("EAB" or "the Board")

---

1. Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required by art. IV, § 12 of the Constitution.

May 10, 2005, and July 26, 2005, orders remanding an August 16, 2004, dredging permit back to DNREC for a proper cost/benefit analysis.

The issue presented by this proceeding is whether the appellees can dredge the Assawoman Canal without complying with the EAB's orders remanding the dredging permit matter to the DNREC. Sierra Club's lawsuit for declaratory and injunctive relief alleged that dredging without complying with the EAB's orders violates Sierra Club's procedural due process rights under Article I, § 9 of the Constitution of the State of Delaware, the fourteenth amendment of the United States Constitution, and the Subaqueous Lands Act, Del.Code Ann. tit. 7, § 7201, *et seq.* ("SLA"). The Court of Chancery granted summary judgment against Sierra Club, finding it had not shown a likelihood of success on the merits and that it would suffer irreparable harm.

Sierra Club has raised two issues on appeal. First, it alleges the Court of Chancery erred when it found that Sierra Club would not succeed on the merits. Second, it alleges the Court of Chancery erred when it granted summary judgment on the basis of lack of irreparable injury to Sierra Club.

The majority has determined that both of Sierra Club's arguments are without merit. The majority concludes that the judgment of the Court of Chancery should be affirmed on the basis of and for the reasons set forth in its decisions of December 2, 2005,[2] and June 19, 2006.[3] Therefore, the judgment of the Court of Chancery is affirmed.

STEELE, Chief Justice and JACOBS, Justice, concurring.

We concur in the result reached here and in the rationale of the Court of Chancery, namely, that the General Assembly's action mooted the administrative proceedings before DNREC and the Chancery litigation. We write separately to state more explicitly why the legislative action mooted those administrative proceedings, and to address more specifically the appellant's claim that the Chancellor's denial of relief was constitutionally impermissible because it deprived the appellant of a vested right, protected by the Due Process Clause, to proceed with its administrative appeal.

First, the record before us shows that the General Assembly (1) was fully aware that the Environmental Appeals Board had remanded the case to the Secretary to perform a cost benefit analysis, and (2) announced in the bond bill that it had undertaken a cost benefit analysis. In such circumstances, this Court, out of deference to an independent, co-equal branch of State Government, should assume that the cost benefit analysis undertaken by the General Assembly was coextensive with, if not identical to, that called for by the Environmental Appeals Board in its remand to the Secretary. Therefore, no purpose would be served by a remand, for which reason the administrative proceedings, and the Court of Chancery action brought to enforce the continuation of those proceedings, were mooted.

Second, the appellant's argument—that its right to continue prosecuting the administrative proceeding is constitutionally protected—is flawed. The only rights implicated here are rights belonging to the public, not rights accruing to any private citizen. No private right has, or could have, vested, because the Sierra Club, in its capacity as plaintiff, does not seek to

---

**2.** Appendix I.

**3.** Appendix II.

enforce a right specific to itself individually or to any individual citizen, but only rights belonging to the public generally. Because solely public rights are involved, the General Assembly is empowered to define (or, in this case, redefine) what the public right shall be.[4] In discharging that responsibility, the General Assembly may supersede any appellate procedure or process established by its own earlier legislation. Because no private rights are involved, such overriding legislation will not be deemed to have abridged any vested private right that would be constitutionally protected from legislative infringement.[5]

For these reasons, we concur in the decision to affirm the judgment of the Court of Chancery.

BERGER, Justice, dissenting.

I would allow the dredging to go forward, based on the General Assembly's decision that the benefits outweigh the costs. There are issues remaining, however, concerning the steps that will be taken to avoid environmental damage after the dredging. Because I do not read the General Assembly's action as having mooted those issues, I would remand for further administrative proceedings on the previously identified post-dredging environmental impact concerns.

**4.** *Hazzard v. Alexander,* 173 A. 517, 519 (Del.Super.1934) ("The rule that a vested right of action is property just as tangible things are, and is protected from arbitrary legislation, applies to those rights of action which spring from contracts or the common law.... No one has a vested right in a public law, but the legislature may repeal or amend all legislative acts not in the nature of contracts or private grants.").

**5.** *Id.; see, Biodiversity Associates v. Cables,* 357 F.3d 1152, 1171 (10th Cir.2004) ("When Congress does not control the substance of a right, there are limits to its ability to influence

Appendix I.

## COURT OF CHANCERY OF THE STATE OF DELAWARE

WILLIAM B. CHANDLER III, CHANCELLOR.

COURT OF CHANCERY COURTHOUSE 34 THE CIRCLE GEORGETOWN, DELAWARE 19947

Submitted: November 29, 2005

Oral Decision: November 29, 2005

Written Decision: December 2, 2005

Albert M. Greto

1701 Shallcross Avenue, Suite C

P.O. Box 756

Wilmington, DE 19899

Robert F. Phillips

Deputy Attorney General

Carvel State Office Building

Wilmington, DE 19801

Re: *Sierra Club v. DNREC, et al.* Civil Action No. 1724–N

Dear Counsel:

This letter decision will memorialize my November 29, 2005 bench ruling in this case. Following oral argument on Sierra Club's motion for a preliminary injunction, I denied the motion. My reasons for refusing injunctive relief are as follows.

the judiciary's determination of that right, either by directing the judiciary to decide a particular way or by setting aside judicial determinations after the fact. But where rights are the creatures of Congress, ... Congress is free to modify them at will, even though its action may dictate results in pending cases and terminate prospective relief in concluded ones. Thus, *[United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871)'s]* prohibition on prescribing rules of decision in pending cases has no application to public rights cases like this one.").

## I.

This case involves the never-ending controversy over the dredging of the Assawoman Canal, a roughly four-mile long man-made canal that was dug in the early 1950s to connect the Indian River Bay to the Little Assawoman Bay in Sussex County. Over the many intervening years, natural silting and erosion have left the canal as an almost impassable waterway with an average depth of two feet below mean low tide. The State of Delaware acquired ownership of the canal in 1990. In the last ten years, the State has made repeated attempts to begin dredging the canal so as to restore it to its historic navigability by watercraft and to increase the "flushing" of the connected bays. After several starts and stops in the process, the Department of Natural Resources and Environmental Control ("DNREC") issued, on August 16, 2004, a permit to dredge the canal, in accordance with 7 *Del. C.* § 7205 (the Subaqueous Lands Act or "SLA"). Plaintiff Sierra Club appealed the August 16 permit order to the Environmental Appeals Board ("EAB"), alleging (among many other complaints) that DNREC failed to perform a proper cost/benefit analysis of the canal dredging as required by its own regulations. After two hearings, the EAB informed counsel on May 10, 2005, that it intended to remand the matter to the Secretary of DNREC to perform an amended cost/benefit analysis. The EAB issued a final opinion and order on July 26, 2005. That decision rejected all of the Sierra Club's arguments regarding environmental harm to the canal. Instead, the EAB's remand was focused on one issue: the cost to the State of Delaware of policing and enforcing a "no wake" speed limit on the canal after it is dredged, as a factor in DNREC's cost-benefit analysis. Importantly for the issue before me, the EAB made it clear that the result of the amended cost-benefit analysis would not itself determine whether the dredging would proceed. The decision to go forward in light of that analysis, said the EAB, remained with the Legislature.[1]

On June 30, 2005—almost one month *before* the EAB issued its remand opinion—the General Assembly adopted the Bond Bill. Section 81 of the Bond Bill states as follows:

> *Section 81. Assawoman Canal Dredging.* It is the express finding of the General Assembly that the benefits of dredging and maintaining the Assawoman Canal exceed the costs of such project and the Secretary of Natural Resources and Environmental control is hereby directed to initiate all necessary actions to dredge the Canal pursuant to all terms and conditions provided for in the state and federal permits issued for the project and initially authorized by Secretary's order 200–W–0047 dated August 12, 2004.

In light of Section 81 of the Bond Bill, DNREC announced its intentions to go forward with the canal dredging without preparing a new cost/benefit analysis that reflects the policing and enforcement costs of increased boat traffic through the canal.

This lawsuit was filed roughly three weeks later. The gravamen of the Sierra Club's complaint is that DNREC is violating the SLA by dredging the canal without a valid permit. It insists that Section 81 of the Bond Bill is unconstitutional because it (1) violates the separation of powers doctrine, (2) contravenes the single-subject rule of the Delaware Constitution (article II, § 16), and (3) deprives the Sierra Club and its members of their due process

---

1. EAB, Final Order and Decision, at Attachment, pp. 2–3.

rights of appeal under the SLA. Based on these claims, the Sierra Club has moved for a temporary restraining order or a preliminary injunction to prevent DNREC from commencing the dredging project.

## II.

The test for the granting of a preliminary injunction is well settled. First, one seeking injunctive relief must establish a reasonable likelihood of success on the merits of their claims. Second, the Court must be persuaded that failure to grant the relief sought will result in injury that will not be remediable by later injunctive relief or compensable by an award of damages. Finally, the Court must evaluate the chance that the defendants (or other persons) will be injured by the improvident granting of the relief sought and whether any injury of that kind could itself be remedied later. In sum, the Court must weigh and balance all of the equities. *See, e.g., Ivanhoe Partners v. Newmont Mining,* Del.Supr., 535 A.2d 1334 (1987). This motion hinges on whether there is a threat of irreparable harm.

## III.

Sierra Club argues that it will be deprived of its right to appeal and the victory it won on appeal if DNREC proceeds with the dredging without complying with the EAB remand opinion to calculate the costs of policing/enforcement of the speed zone on the canal. In other words, the dredging will irreparably damage the Sierra Club's procedural rights to have its objection to DNREC's costs/benefit analysis considered anew by the Secretary of DNREC, as ordered by the EAB.

I am not persuaded by the Sierra Club's assertions of threatened irreparable harm. At the outset, it is important to bear in mind that the EAB rejected *all* of the Sierra Club's contentions regarding environmental and ecological harm to the canal as a result of dredging. The EAB stated:

[T]he Sierra Club raises several issues related to the Secretary's determination of the environmental impacts to the dredge and disposal sites, impacts on water quality, and the long term effects of the dredging on biologically productive areas. . . . [W]ith regard to all these issues, the Sierra Club failed to satisfy its burden of proving that the permit decisions were not supported by the evidence on record before the Board.[2]

Instead, the EAB focused on one deficiency in DNREC cost/benefit analysis: the failure to calculate and consider the enforcement and policing costs associated with increased boat traffic through the canal.[3] As the EAB expressly noted, the additional enforcement costs would "depend[ ] upon potential funding from the General Assembly."[4] With this important fact in mind, it is evident that the Sierra Club cannot argue that the dredging *itself* will cause it irreparable harm. Instead, the argument is that the dredging will deprive the Sierra Club of its "procedural rights" to insist on DNREC undertaking a new cost/benefit calculation. The alleged interference with the Sierra Club's procedural due process rights, however, cannot be equated (in my opinion) with the irreparable injury required to justify the extraordinary relief of an injunction. The Sierra Club has not lost any substantive right or privilege. At most, it has endured an abbreviation, or short-circuiting, of an

**2.** EAB, *Final Order and Decision* at 40 (July 26, 2005).

**3.** *Id.* at 44.

**4.** *Id.*

appellate review procedure that was available to it. That is, the amended cost-benefit analysis would have served to inform the General Assembly of the relative benefit of this project. Instead, the General Assembly reached its own conclusion, and instructed DNREC that the extra costs of policing and enforcement associated with increased boat traffic are insufficient to outweigh the public benefits of dredging the canal. Of course, this is entirely within the prerogative of the General Assembly, which has plenary authority to tax, borrow and appropriate money for public purposes.[5] Put simply, Section 81 of the Bond Bill instructed the Secretary of DNREC that all additional enforcement and policing expenses would be provided for in existing and future appropriations in connection with the dredging project. This act cannot be characterized as inflicting irreparable harm upon Sierra Club. At most, Sierra Club has seen its procedural victory disappear, but that in no way constitutes irreparable injury to it, or its members. The Sierra Club's procedural right to have its appeal heard and considered has been enforced. But it had no right to *preclude* the dredging of the canal. Even the EAB noted that the recalculation of the cost/benefit analysis was merely a "relational comparison," not a substantive right to halt the dredging of the canal.[6] In fact, the EAB explicitly noted that even if the recalculation based on enforcement costs showed that costs were in excess of benefit, proceeding with

the dredging project was still within "the purview of the legislature."[7]

When pressed on the irreparable harm issue, the Sierra Club's counsel could only point to one authority to support its view that injury to a procedural right of appeal constitutes irreparable harm: *Couch v. Delmarva Power & Light Co.*, 593 A.2d 554 (Del.Ch.1991). But the *Couch* decision does not so hold. All that *Couch* stands for is the proposition that a failure by government to follow its own rules or regulations may give parties adversely affected by that action an opportunity to seek relief. The question it begs is whether the adverse affect is irreparable in nature. In this case, nothing in this record even remotely suggests that the injury to the Sierra Club is irreparable in nature.[8] For this reason, injunctive relief is not warranted. I therefore deny Sierra Club's motion for a temporary restraining order or for a preliminary injunction. DNREC may proceed with its canal-dredging project under its order 200–W–0047 dated August 12, 2004.

IT IS SO ORDERED.

Very truly yours,

William B. Chandler III

WBC III:meg

## Appendix II.
## COURT OF CHANCERY OF THE STATE OF DELAWARE

WILLIAM B. CHANDLER III, CHANCELLOR.

---

5. Del. Const., art. II, § 1, art. VIII, §§ 2, 3, 6.

6. EAB, Final Order and Decision, at Attachment A, pp. 2–3.

7. *Id.*

8. It is not at all clear that Sierra Club's procedural rights have been violated. And, indeed, I harbor serious doubts as to the merits of its

claims. The injury posed by the wrongful (if wrongful it was) failure of DNREC to amend its cost-benefit analysis can at most, and indirectly, lead to some financial harm to Delaware and its taxpayers. As a tax-exempt entity, it is not clear to me on what basis the Sierra Club has standing to pursue the merits of its claims, in any event.

Court of Chancery Courthouse 34 The Circle Georgetown, Delaware 19947

Date Submitted: February 24, 2006

Date Decided: June 19, 2006

Albert M. Greto

1701 Shallcross Avenue, Suite C

P.O. Box 756

Wilmington, DE 19899

Robert F. Phillips

Deputy Attorney General

Carvel State Office Building

Wilmington, DE 19801

Re: *Sierra Club v. DNREC, et al.* Civil Action No. 1724–N

Dear Counsel:

Pending before the Court is defendants' motion for summary judgment in this case, which involves a challenge to the long-proposed maintenance dredging of a man-made waterway in Sussex County. For the reasons set forth below, I grant the motion.

## I. FACTUAL BACKGROUND

The facts of this case have been adequately described in my December 2, 2005, letter decision [1] (the "December Opinion"), which denied Sierra Club's motion for a preliminary injunction. I include here only an abbreviated factual summary for the reader's convenience.

On August 16, 2004, the defendant Department of Natural Resources and Environmental Control ("DNREC") issued a permit to dredge the Assawoman Canal, in accordance with 7 *Del. C.* § 7205 (the Subaqueous Lands Act or "SLA"). Plaintiff

Sierra Club appealed the August 16 permit order to the Environmental Appeals Board ("EAB"), objecting to certain alleged environmental effects of the dredging and to DNREC's failure to perform a proper cost/benefit analysis of the dredging project. On May 10, 2005, the EAB informed counsel (via a one-line email) that the EAB intended to remand the matter to the Secretary of DNREC to perform an amended cost/benefit analysis (the "EAB Email"). Ultimately, the EAB issued a final opinion and order on July 26, 2005 (the "EAB Order"), rejecting all of Sierra Club's arguments regarding environmental harm to the canal. Although it rejected all of the Sierra Club's substantive attacks on the August 16 permit order, the EAB Order focused its analysis on a single question: whether, as part of its cost/benefit analysis regarding the canal project, DNREC properly calculated the future cost of policing and enforcing a "no wake" speed zone on the canal after it is dredged. Importantly, the EAB Order made it clear that the result of DNREC's amended cost/benefit analysis had no bearing whatsoever on the environmental effects of the dredging. Moreover, the EAB Order acknowledged that the required cost/benefit analysis would not itself influence whether the dredging would proceed. The decision to go forward with the dredging project, the EAB correctly observed, remained with the Legislature.[2]

In the meantime, on June 30, 2005—almost one full month *before* the EAB Order was issued—the General Assembly adopted Senate Bill No. 190, the FY 06 Bond Bill.[3] Section 81 of the Bond Bill ("Section 81") states as follows:

---

1. *Sierra Club v. Dep't of Natural Res. and Envtl. Control,* 2005 WL 3359113, at *2 (Del. Ch.2005).

2. EAB, Final Order and Decision, at Attach, pp. 2–3.

3. Fiscal Year 2006 Capital Improvements Act, 75 Del. Laws ch. 98 (2005).

*Section 81. Assawoman Canal Dredging.* It is the express finding of the General Assembly that the benefits of dredging and maintaining the Assawoman Canal exceed the costs of such project and the Secretary of Natural Resources and Environmental control is hereby directed to initiate all necessary actions to dredge the Canal pursuant to all terms and conditions provided for in the state and federal permits issued for the project and initially authorized by Secretary's order 200–W–0047 dated August 12, 2004.

As the opening paragraph to the EAB Order makes clear, the EAB was fully aware of Section 81 and its implications when the EAB rendered its decision on Sierra Club's appeal. On September 28, 2005, DNREC announced that it intended to proceed with dredging the canal and that, in light of the clear legislative declaration in Section 81, DNREC would forego preparing a new cost/benefit analysis to reflect the enforcement costs associated with policing the "no wake" zone in the dredged canal.

Sierra Club filed this injunction action three weeks later, seeking to enjoin the dredging on the grounds that 1) the defendants' decision to proceed with dredging would violate Sierra Club's procedural due process right (won before the EAB) to insist on a new cost/benefit analysis, and 2) the defendants' reliance upon Section 81 was unlawful because Section 81 itself is unconstitutional. Plaintiff sought a preliminary injunction to prevent the proposed dredging. In a ruling from the bench on November 29, 2005, I denied Sierra Club's motion for a preliminary injunction, which was promptly followed by my December Opinion. Based on my primary conclusion that Sierra Club could not demonstrate the threat of irreparable harm, DNREC has since filed the pending motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[4] The moving party must show that no genuine issue of material fact exists,[5] at which point "the burden shifts to the nonmoving party to substantiate its adverse claim by showing that there are material issues of fact in dispute."[6] Although I must view all evidence in the light most favorable to the nonmoving party,[7] this does not mean that the nonmoving party can safely stand mute in the face of a summary judgment motion.[8] On the contrary, where the moving party supports its motion with admissible evidence and points to the absence of proof bolstering the nonmoving party's claims, the nonmoving party must come forward with admissible evidence creating a triable issue of material fact or suffer an adverse judgment.[9]

4. Ct. Ch. R. 56(c).

5. *Scureman v. Judge,* 626 A.2d 5, 10 (Del.Ch. 1992), *af'd, Wilmington Trust Co. v. Judge,* 628 A.2d 85 (Del.1993) (ORDER).

6. *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del. 1995).

7. *Scureman,* 626 A.2d at 10–11.

8. *In re Gaylord Container Corp. S'holders Litig.,* 753 A.2d 462, 473 (Del.Ch.2000).

9. *Id. See, e.g., In re Liquidation of Nat'l Heritage Life Ins. Co.,* 728 A.2d 52, 56 (Del.Ch. 1998), *aff'd,* 723 A.2d 397 (Del.1998); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The record reveals no genuine issue of material fact precluding resolution of this case through entry of summary judgment. Defendants point to a record that is largely uncontested. Despite protestations that summary judgment is improper at this stage, Sierra Club has not come forward with evidence rebutting defendants' presentation and creating an issue of material fact. This case is a classic example of a dispute over pure questions of law. Summary judgment therefore is entirely proper at this stage.

### III. ANALYSIS

Sierra Club argues that it will be deprived of its procedural right to appeal (and the victory it won on appeal) to the EAB if DNREC proceeds with the dredging without complying with the EAB remand opinion to calculate the costs of policing/enforcement of the speed zone on the canal. In other words, if DNREC dredges the canal, it will irreparably damage Sierra Club's procedural rights to have its cost/benefit objection considered anew by the Secretary of DNREC, as ordered by the EAB. Sierra Club also contends that Section 81 of the Bond Bill is unconstitutional, thus depriving the Secretary of any authority to ignore the EAB's remand order. For relief, Sierra Club does not seek an order commanding the Secretary of DNREC to comply with the EAB's cost/benefit recalculation directive. Rather, Sierra Club seeks an injunction to prevent the dredging of the canal.

The elements for permanent injunctive relief are: (1) actual success on the merits; (2) irreparable harm will be suffered if injunctive relief is not granted; and (3) the harm that will result from a failure to enjoin the actions that threaten plaintiff outweighs the harm that will befall the defendant if an injunction is granted.[10] Although it remains clear in this case that no irreparable harm is threatened sufficient to justify the extraordinary relief of a permanent injunction, I nonetheless will briefly address the merits prong of the preliminary injunction standard.

#### A. Actual Success on the Merits

The merits of Sierra Club's claims focus on the alleged destruction of its right to appeal, caused by defendants' decision to rely on Section 81 and to dredge the Assawoman Canal without complying with the EAB's July 26, 2005 Final Order.[11] Sierra Club insists that reliance on Section 81 violates not one, but two separation of powers tests applied by the Delaware Supreme Court.

The first test, applied in *Evans v. State,* bars the General Assembly from reversing an adjudicatory decision in a particular case.[12] In *Evans,* a defendant sentenced to life with the possibility of parole argued before the Delaware Supreme Court that he was entitled to a conditional release date, contrary to an opinion by the Superior Court. The Delaware Supreme Court issued an opinion on November 23, 2004 (the "November Decision") that reversed the Superior Court.[13] As a result, the

---

**10.** *Korn v. New Castle County,* 2005 WL 2266590, at \*14 (Del.Ch. Sept. 13, 2005).

**11.** Unfortunately, the parties have not succeeded in providing the Court with helpful briefing on the legal issues raised in this matter. As but one example of the useless sacrifice of good trees occasioned by this litigation is the countless pages of briefing devoted to

the irrelevant debate over whether the EAB decided the appeal on May 10 when it sent its email to the parties, or on July 26 when it issued its "Final Order and Decision."

**12.** 872 A.2d 539 (Del.2005).

**13.** *Id.* at 542.

General Assembly adopted a statute (the "Evans Bill") that specifically declared the Supreme Court's November Decision to be "null and void." [14] Finding that the Evans Bill purported to reverse a judicial decision made in a particular case, the Delaware Supreme Court declared that the Evans Bill violated the Delaware Constitution's separation of legislative and judicial powers. [15]

This case is different, and not controlled by *Evans.* Here, Section 81 did not reverse the EAB Email or the EAB Order. Indeed, the EAB Order was not even in existence when the Legislature adopted the Bond Bill on June 30, 2005. In addition, the EAB Order stated that another cost/benefit analysis should be performed but the EAB specifically acknowledged that the ultimate decision to go forward with the project remained with the Legislature. Section 81 specifically informed the relevant agency (DNREC) that the General Assembly viewed the benefits of the dredging project as outweighing its costs. Contrary to Sierra Club's argument, Section 81 did not reverse a particular determination made by the EAB, but rather addressed the EAB's request for additional information from DNREC, and the EAB's implicit request for legislative guidance. In other words, Section 81 did not reverse the EAB's remand order. Section 81 rendered the EAB Order moot. Thus, *Evans* is inapplicable in these circumstances.

Next, Sierra Club argues that Section 81 violates a second (and this time, multipart) separation of powers test applied by the Delaware Supreme Court in an advisory decision styled *Opinion of the Justices.* [16] The test has three parts. First, is the nature of the power being exercised exclusively executive or legislative or is it a blend of the two? Second, is the control exercised by the legislative department coercive? Third, is the intent of the Legislature to cooperate with the executive by furnishing unique information? In this case, determining the costs and benefits of a particular dredging project is inherently a blend of executive and legislative powers, as the project's costs are inevitably paid by legislative appropriations. Consequently, in advising DNREC of the General Assembly's findings regarding the costs of the canal dredging project, Section 81 exercised power that was only a blend of executive and legislative powers. Section 81 specifically requires adherence to DNREC's previously issued permits, and it addresses the EAB's acknowledgment that the final decision remained with the Legislature. Section 81 plainly instructs DNREC to carry out the dredging in accordance with its previously issued permit, and in accordance with past and future appropriations for the project as established in the budgetary process for DNREC. Accordingly, in my opinion, Section 81 does not run afoul of the Supreme Court's alternative separation of powers test.

Sierra Club's failure to demonstrate that Section 81 violates the separation of powers doctrine as understood under the state constitution is sufficient for me to grant judgment in defendants' favor. Nevertheless, I will briefly describe other precedents that buttress my confidence more generally. Numerous federal cases address separation of powers issues similar to those presented here. Those cases likewise suggest, in my view, that Section 81 is a permissible exercise of legislative author-

14. *Id.* at 543.

15. *Id.* at 549–50.

16. 380 A.2d 109 (Del.1977).

ity—notwithstanding its application to an ongoing administrative proceeding, its specificity mooting a particular administrative appeal, and its impact upon a third party.

In *Saco River Cellular, Inc. v. Federal Communications Commission*, the District of Columbia Circuit Court of Appeals had to address whether an administrative agency could retroactively apply legislation during ongoing administrative proceedings.[17] The Court found that the statute's language made clear its intent to be applied retroactively.[18] In *National Coalition to Save Our Mall v. Norton*, a lawsuit was brought to enjoin the placement of a proposed World War II memorial on the National Mall. Congress responded by legislating that the decision to locate the memorial at the National Mall—including agency actions and the issuance of requisite permits—would not be subject to judicial review.[19] In addition to finding that Congress did have the power to impose new substantive rules on suits such as the one pending in that case, the Court of Appeals found that the level of specificity in the legislation—addressing a particular memorial *after* a lawsuit had been brought challenging its location—was unobjectionable.[20]

Finally, in *Biodiversity Associates v. Cables*, the United States Court of Appeals for the Tenth Circuit addressed an issue perhaps most closely analogous to Sierra Club's challenge in this action.[21] In 2001 forest managers in South Dakota realized that due to an epidemic infestation by mountain pine beetles, immediate harvesting of deadwood and infested trees was necessary to guard against further spread of infestation and potentially disastrous forest fires.[22] Unfortunately, a settlement agreement signed a year earlier by the Forest Service and certain environmental groups prohibited such harvesting.[23] The Forest Service reached a modified agreement with all the environmental groups save one, but was unable to mollify this final holdout; consequently, South Dakota interests turned to Congress for a legislative solution.[24] In a rider to an unrelated appropriations bill, Congress enacted into law essentially the terms of the modified agreement negotiated with the other environmental groups.[25] The legislation required the Forest Service to take a variety of actions that violated the original settlement agreement.[26] The holdout environmental group went to federal court seeking continued enforcement of the settlement agreement, which the lower court denied.[27]

On appeal, the Tenth Circuit examined appellant's argument that the particularity of the legislation was indicative of Congress's unconstitutionally mandating how the law was to be implemented, rather than a constitutional change to the applicable law.[28] The Tenth Circuit noted that the executive role of taking care that the laws be faithfully executed is entirely de-

17. 133 F.3d 25 (D.C.Cir.1998).

18. *Id.* at 31.

19. 269 F.3d 1092 (D.C.Cir.2001).

20. *Id.* at 1096–97.

21. 357 F.3d 1152 (10th Cir.2004).

22. *Id.* at 1158–59.

23. *Id.* at 1158.

24. *Id.* at 1159.

25. *Id.*

26. *Id.*

27. *Id.* at 1159–60.

28. *Id.* at 1161.

rivative of the laws passed by Congress, and Congress may be as specific in its instructions to the Executive as it wishes.[29] The Court went on to explain that this legislative prerogative to specify was not extinguished when creating law specific to an area already legislated upon:

> To give specific orders *by duly enacted legislation* in an area where Congress has previously delegated managerial authority is not an unconstitutional encroachment on the prerogatives of the Executive; it is merely to reclaim the formerly delegated authority.[30]

Sierra Club's challenge to the constitutionality of Section 81 falls squarely within this principle elucidated in *Biodiversity Associates*. The General Assembly gave specific guidance with Section 81 in an area where managerial authority already had been delegated to DNREC and the EAB. The General Assembly reclaimed a portion of that authority by duly enacting legislation and did not, therefore, overstep its constitutional bounds.[31]

As its final constitutional attack on Section 81, Sierra Club contends that Section 81 violates the "one-subject" rule set forth in article II § 16 of the Delaware Constitution.[32] The Delaware Supreme Court already has recognized that under the Delaware Constitution, a bill of the General Assembly that appropriates money for public purposes is free of the restraint that it be limited to a single subject.[33] Because the Bond Bill was an appropriations bill, there is no constitutional requirement that it be limited to the single subject that is expressed in its title.

Because Section 81 does not violate the separation of powers doctrine, and because it does not violate the single subject rule of article II § 16 of the Delaware Constitution, Sierra Club's claim that defendants impermissibly relied on Section 81 when it decided to forego the cost/benefit analysis and to proceed with dredging the Assawoman Canal is without merit.

### B. Irreparable Harm

The alleged interference with Sierra Club's procedural due process rights cannot be equated with the irreparable injury required to justify the extraordinary relief of an injunction. Sierra Club has not lost any substantive right or privilege. The alleged harm, if any, is procedural in na-

---

**29.** *Id.* at 1162 (quotations omitted).

**30.** *Id.*

**31.** It is worth noting that unlike the legislative power of the United States Congress, the legislative power of the General Assembly is plenary. Randy J. Holland, *The Delaware Constitution: A Reference Guide* 69 (2002). "In the American States, as distinguished from the Federal Government, the legislative power is as broad and ample in its omnipotence as sovereignty itself, except in so far as it may be curtailed by constitutional restrictions express or necessarily implied." *Collison v. State,* 2 A.2d 97, 100 (Del.1938). Congress's action in *Biodiversity Associates* was found constitutional even under the United States Constitution, which is a grant of legislative power as to only those powers enumerated. *See* Hol-land, at 69. Under a similar set of facts, the General Assembly was well within its prerogative to exercise its much broader plenary authority to enact Section 81 and to instruct the administrative agency how to proceed.

**32.** Del. Const. art. II, § 16 ("No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title.").

**33.** *Turnbull v. Fink,* 668 A.2d 1370, 1378 (Del. 1995) (upholding a substantive amendment to a statute providing for a limited waiver of sovereign immunity, even though it appeared in the 1989 Bond Bill). *See also* Randy J. Holland, *The Delaware Constitution: A Reference Guide* 90–93 (2002).

ture, as the EAB Order made it clear that the cost/benefit analysis could not alone prevent the dredging, and that the final decision remained with the Legislature. Sierra Club cites two Delaware cases that allegedly stand for the broad proposition that being prevented from raising arguments or challenging decisions constitutes irreparable injury. Neither case stands for such a broad proposition.

In the first case, *Qwest Communications International, Inc. v. National Union Fire Insurance Co. of Pittsburgh, Inc.*, plaintiff asked the Court of Chancery to enforce a *contractual* right granted in an insurance policy.[34] The Court found no question that plaintiff would suffer irreparable injury if defendants would continue to pursue their demands for arbitration, as plaintiff would lose an important contractual right affecting a high stakes insurance coverage dispute.[35]

In the second case, *Delaware River and Bay Authority v. Carello*, the Court enjoined a local union from seeking certification by the Department of Labor and Industrial Relations of Delaware as the exclusive bargaining agent for certain employees working at the Delaware Memorial Bridge, finding that Delaware could not unilaterally legislate an act recognizing the right to organize Authority employees, when the Authority was formed by a compact between Delaware and New Jersey.[36] The Court found that the local union and the Department of Labor were both relying on a statute[37] that was inapplicable to the operation of the Delaware Memorial Bridge.[38] In other words, permitting the certification hearing to proceed would effectively abridge the Authority's rights under the compact between Delaware and New Jersey.

Rather than ultimately implicating contractual rights or rights created by interstate compact, the only right possibly implicated here is procedural in nature. In the cases described above, the abridgement of procedures adversely affected a claimant. As I stated in my December Opinion, the ultimate question is whether the adverse affect of such procedural abridgment is an irreparable harm. Nothing in this record even remotely suggests that the injury to Sierra Club is irreparable in nature, especially when a cost/benefit analysis would be a futile administrative exercise without consequence.

Sierra Club was afforded a full hearing and review of all its claims, which the EAB completely rejected (except for the cost/benefit analysis argument). Although the amended cost/benefit analysis might have informed the General Assembly of the relative benefit of this project, the General Assembly instead reached its own conclusion and instructed DNREC that the extra costs of policing and enforcement associated with increased boat traffic are insufficient to outweigh the public benefits of dredging the canal. The theoretical injury inflicted by DNREC's refusal to amend its cost/benefit analysis (in light of the legislative determination in Section 81 of the Bond Bill) may at most, and indi-

---

34. 821 A.2d 323 (Del.Ch.2002).

35. *Id.* at 329.

36. 222 A.2d 794 (Del.Ch.1966).

37. *Id.* at 797 ("In the case at bar, the statute upon which the Department of Labor and Industrial Relations of Delaware and Local 313 rely is claimed by plaintiff to be either inapplicable to plaintiff's bridge operations, including, of course, its employment practices there carried on, or, if applicable, that such statute is unconstitutional.")

38. *Id.* at 800.

rectly, have a future fiscal impact upon Delaware taxpayers, who ultimately will bear the increased costs, if any, associated with policing and enforcing the canal's "no wake" zone. But the Legislature's finding that the benefits of dredging the canal outweigh its present and future costs (including enforcement costs) simply means that the Sierra Club's procedural victory before the EAB has been mooted, an "injury" (if that is the proper term) so trifling that it cannot conceivably amount to irreparable injury warranting the extraordinary remedy of an injunction against the dredging project.[39] Of course, legislation of this kind is entirely within the prerogative of the General Assembly, which has plenary authority to tax, borrow and appropriate money for public purposes.[40] The policy reasons that prompt the enactment of legislation such as Section 81 are solely the concern of the General Assembly and it is not the function of the judiciary to question the wisdom underlying the passage of a statute.[41]

Put simply, Section 81 of the Bond Bill instructed the Secretary of DNREC that all additional enforcement and policing expenses associated with the dredging project would be provided for in existing and future budgetary appropriations in DNREC's departmental budget. This act cannot be characterized as inflicting irreparable harm upon Sierra Club. At most, Sierra Club has seen its procedural victory disappear, but that in no way constitutes irreparable injury to it or its members. Sierra Club's procedural right to have its appeal heard and considered has been enforced and since mooted by action of the General Assembly. Sierra Club was never granted a right to *preclude* the dredging of the canal or to give a cost/benefit analysis consequence it no longer possessed. Even the EAB noted that the recalculation of the cost/benefit analysis was merely a "relational comparison," not a substantive right to halt the dredging of the canal.[42] In fact, the EAB explicitly noted that even if the recalculation based on enforcement costs showed that costs were in excess of benefit, proceeding with the dredging project was still within "the purview of the legislature."[43]

## IV. CONCLUSION

For all these reasons, Sierra Club's complaint for injunctive relief fails. I therefore grant defendants' motion for summary judgment. DNREC may proceed with its canal-dredging project under its order 200–W–0047 dated August 12, 2004. An Order has been entered consistent with this decision.

Very truly yours,

William B. Chandler III

WBC III:bsr

---

**39.** *See, e.g., Citizens for Smyrna-Clayton First v. Town of Smyrna,* 2002 WL 31926613, at \*4 (Del.Ch. Dec.24, 2002) (Master's Report)("[A] de minimis invasion of rights, even the right to procedural due process, is simply beyond a remedy."), *confirmed in part,* C.A. No. 1545–K, Chandler, C. (Dec. 31, 2002), *af'd,* 818 A.2d 970 (Del.2003) (Table).

**40.** Del. Const. art. II, § 1, art. VIII, §§ 2, 3, 6.

**41.** *Ames v. Wilmington Hous. Auth.,* 233 A.2d 453, 456 (Del.1967).

**42.** EAB, Final Order and Decision, at Attach. A, pp. 2–3.

**43.** *Id.*