**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| VILLAGES OF FIVE POINTS VENTURES, LLC, a Delaware Limited Liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2019-0094-KSJM |
| THE VILLAGES OF FIVE POINTS PROPERTY OWNERS ASSOCIATION, INC., a Delaware Corporation, JOHN EIKREM, CYNTHIA CAMPBELL, MIKE SOUTH, DAVID ZELIKOFF, CAROLE KOHR, BRENDA STOVER, and TINA DOWNS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION TO DISMISS**

1. The Villages of Five Points R.P.C. (the "Villages") is a community in Sussex County, Delaware governed by a Declaration of Covenants, Conditions and Restrictions dated as of August 13, 2001 (the "Declaration").[1]

2. Plaintiff Villages of Five Points Ventures, LLC ("Plaintiff") owns a shopping center in the Villages called the "Villages Shopping Center."

---

[1] C.A. No. 2019-0094-KSJM, Docket ("Dkt.") 39, Verified Am. Compl. for Breach of Fiduciary Duty/Declaratory J. ("Am. Compl.") Ex. A. The Declaration has been amended three times. *See* Am. Compl. Exs. B, C, D.

3. Defendant Villages of Five Points Property Owners Association, Inc. (the "Association") is a Delaware corporation formed "for the purpose of providing for the operation, maintenance, repair and replacement of the common areas and facilities to the Villages."[2]

4. The individual defendants comprised the Association's board of directors (the "Board") at relevant times.[3]

5. This dispute concerns Plaintiff's payments toward the Association's Common Expenses incurred in maintaining the Villages' common areas. The Declaration defines "Common Expenses" as:

> [A]ctual and estimated expenses incurred by or on behalf of the Association in accordance with the provisions and intent of this Declaration and shall include amounts necessary to establish and maintain reserve fund(s) determined to be necessary and appropriate by the Board of Directors.[4]

6. Section 7.3.3.3 of Declaration requires that Class C Members must contribute 10% of the budgeted amount of Common Expenses up to a cap of

---

[2] Am. Compl. ¶ 5.

[3] It is unclear whether Plaintiff intended to sue the individual defendants. Although they are named in the caption and in the Amended Complaint, counsel for Plaintiff suggested that Plaintiff did not intend to sue the individual defendants during oral argument. Dkt. 55, Tr. of Aug. 20, 2020 Oral Arg. ("Oral Arg. Tr.") at 22:12–20.

[4] Am. Compl. Ex. A art. I.

$40,000. Plaintiff is the only Class C Member,[5] so Plaintiff's contribution to the budget is capped at $40,000. Section 7.3.3.3 provides:

> Class C Members shall be assessed ten percent (10%) of the total budget amount. Notwithstanding this Assessment allocation and any other provisions contained in this Declaration, the total Annual Assessment for the Class C Members, excluding the Initial Assessment and any duly authorized Special Assessment, shall not exceed Forty Thousand Dollars ($40,000.00) . . . . This specific limitation may not be amended without the consent of the Class C Members.[6]

7. The Board began planning the Villages' 2019 operating budget in the summer of 2018, and the first budget proposal contemplated total assessments of $810,263, including a $36,225 assessment on Plaintiff as a Class C Member.[7] Then, in 2018 and early 2019, the Board received grievances from homeowners who felt that they were shouldering an unfair portion of the Common Expenses. The Board developed a proposal to address those concerns, which it sent to Defendant by a letter dated January 24, 2019.[8]

---

[5] *See* Am. Compl. Ex. D ¶ 6 ("The Class C Member shall be the Owner(s) of the Village Shopping Center.").

[6] Am. Compl. Ex. A § 7.3.3.3. The omitted language, which appears to establish an initial period for the $40,000 cap and a limit on increasing the assessment after that initial period, is not relevant to the instant dispute.

[7] *See* Dkt. 1, Verified Compl. for Breach of Fiduciary Duty/Declaratory J. ("Verified Compl.") Ex. E. A review of the 2019 budget reveals that the Villages split the $40,000 assessment with another party, which contributed the remaining $3,775. *See id.*

[8] Am. Compl. Ex. F at 1.

3

8.     The Association proposed to amend the Declaration to add a new Section 5.2.6 (the "Proposed Amendment"). The Proposed Amendment provided the Association with the right "to charge a use fee on all the visitors, invitees, guests, customers and delivery services to the Village Shopping Center."[9] The Proposed Amendment further provided that the use fee would not exceed $80,000 per year and that it would be "fixed in the budget of the Association."[10]

9.     Plaintiff responded through counsel by a letter dated January 30, 2019.[11] The letter stated Plaintiff's view that the Proposed Amendment constituted an end-run around and violation of Section 7.3.3.3 and that Plaintiff would refuse to approve the budget.[12] The letter further threatened that Plaintiff would "do everything necessary to protect the existing assessment cap."[13] Plaintiff reiterated its belief that it "receive[d] very little in return for [its] assessment."[14]

10.     On February 8, 2019, Plaintiff filed this lawsuit. Two days later, a representative of the Association emailed a representative of Plaintiff to state that there had been a meeting of some Board members, they "all agree[d] that [Plaintiff]

---

[9] *Id.*

[10] *Id.*

[11] Am. Compl. Ex. H.

[12] *See id.* at 2.

[13] *Id.*

[14] *Id.*

[was] in compliance with what [Plaintiff] signed up for," that they need to "figure out how to correct this imbalance among all of the shareholders," but that they would "not pursue a course of action without further discussion with [Plaintiff]."[15] It is unclear whether the Association was aware of the lawsuit when this communication went out due to the usual delays in service of process.[16]

11. After Defendants were served with the complaint, they requested that Plaintiff withdraw the lawsuit and engage in discussions to resolve the dispute.[17] Plaintiff responded by requesting that the Association's counsel contact Plaintiff's counsel so that the parties could "come up with an agreement" and "put this to bed."[18] That did not transpire, and the litigation continued.

---

[15] Am. Compl. Ex. I.

[16] There is another litigation pending concerning the allocation of Association expenses to Class A Association members, which was filed by homeowner Joseph Rolla. *See Rolla v. The Vill. of Five Points Prop. Owners Ass'n, Inc.*, C.A. No. 2019-0986-PWG. Plaintiff argues that the fact of the Rolla action "creates greater pressure upon [the Association] to attempt to violate Section 7.3.3.3." Dkt. 43, Pl.'s Answering Br. in Opp'n to Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Pl.'s Answering Br.") at 24. After Plaintiff filed its Answering Brief, the parties to the Rolla action agreed on terms of a settlement. As explained by counsel during oral argument, Plaintiff at first interpreted aspects of the settlement as resolving Plaintiff's claims, Oral Arg. Tr. at 31:3–32:19, but a challenge to the settlement along with actions and statements by the Association made Plaintiff rethink that conclusion. *See id.* at 32:12–19, 34:1–17. So, it is unclear whether the Rolla action has any bearing on the instant matter.

[17] *See* Am. Compl. Ex. K.

[18] *Id.*

12.    Apparently, the Association did not wish to litigate with Plaintiff.  On March 23, 2019, the Board adopted the following resolution (the "Resolution"):

> RESOLVED, that the [Board] hereby ratifies the President's decision, made by him immediately following the meeting with the representative Class C Members [Plaintiff], to not consider pursuing, through a vote of the members or otherwise, a proposed amendment to the Declaration which would allow the Association to charge a use fee on visitors to the Village Shopping Center.[19]

13.    The Association filed its Answer in March 2019 and its Amended Answer in April 2019.[20]  The Amended Answer attached the Resolution.[21]

14.    The Resolution did not allay Plaintiff's concerns, but from that point forward, the litigation largely focused on whether the Resolution resolved the controversy.  Defendants first attempted to tee-up this question by moving for judgment on the pleadings.[22]  The parties subsequently stipulated to allow Plaintiff to amend and supplement its complaint,[23] which Plaintiff did on November 21, 2019.[24]  As amended and supplemented, the complaint referenced and challenged

---

[19] Am. Compl. Ex. C.

[20] *See* Dkt. 6, Def. The Villages of Five Points Property Owners Association, Inc.'s Answer to the Compl.; Dkt. 10, Def. The Villages of Five Points Property Owners Association, Inc.'s Am. Answer to the Compl. ("Am. Answer").

[21] *See* Resolution.

[22] *See* Dkt. 16, Def. The Villages of Five Points Property Owners Association, Inc.'s Mot. for J. on the Pleadings.

[23] Dkt. 38, Granted Stipulation and Order Consented by Both Parties ¶ 1.

[24] Am. Compl.

the effect of the Resolution in part. Defendants then moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6), and the parties fully briefed that motion by January 30, 2020.[25] The court held oral argument on August 20, 2020.[26]

## LEGAL ANALYSIS

15. Under Rule 12(b)(6), the court may grant a motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted."[27] "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[28] When considering such a motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[29] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[30]

---

[25] *See* Dkt. 41, Opening Br. in Supp. of Defs.' Mot. to Dismiss ("Def.'s Opening Br."); Pl.'s Answering Br.; Dkt. 44, Reply Br. in Supp. of Defs.' Mot. to Dismiss.

[26] *See* Oral Arg. Tr.

[27] Ct. Ch. R. 12(b)(6).

[28] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[29] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[30] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

16.     The Amended Complaint contains four causes of action, which this decision refers to as Counts I through IV:

- In Count I, Plaintiff seeks a declaratory judgment that the Proposed Amendment violates Section 7.3.3.3.[31]

- In Count II, Plaintiff claims that Defendants breached their fiduciary duties by proposing the Proposed Amendment.[32]

- In Count III, Plaintiff claims that Defendants "have or will breach the Declaration by enacting Section 5.2.6 or any similar Resolution and/or Amendment designed to circumvent Section 7.3.3.3."[33]

- In Count IV, Plaintiff seeks injunctive relief requiring Defendants to "operate the Villages of Five Points in a manner consistent with the Declaration."[34]

17.     At the core of each of Plaintiff's claims is the contention that the Proposed Amendment would have breached a limitation in the Declaration for which Plaintiff specifically negotiated—Section 7.3.3.3.[35] Plaintiff's claims, and claims of this nature generally, sound in contract.[36] There is no theoretically cognizable claim

---

[31] Am. Compl. ¶¶ 29–30.

[32] *Id.* ¶¶ 31–33.

[33] *Id.* ¶ 36.

[34] *Id.* ¶ 38.

[35] Am. Compl. Ex. H (explaining that the $40,000 cap "was an item negotiated with the original developer" and a "key provision upon which [Plaintiff] relied in going forward with its purchase").

[36] *See Seabreak Homeowners Ass'n v. Gresser*, 517 A.2d 263, 269 (Del. Ch. 1986) (holding that claims related to restrictive covenants in homeowners association's declaration of restrictions was "contractual in nature"); *Cove on Herring Creek Homeowners' Ass'n v. Riggs*, 2005 WL 1252399, at *1 (Del. Ch. May 19, 2005) (holding that claims related to restrictive covenants in homeowners association's

for breach of fiduciary duty. Because the Proposed Amendment was never acted on, Plaintiff cannot demonstrate any contractual breach. Because the Association issued the Resolution expressly abandoning the Proposed Amendment, Plaintiff cannot demonstrate any probability of a future breach. Plaintiff therefore fails to state a claim, as discussed more fully below.

18. Count I challenges the Proposed Amendment under a breach of contract theory. It is deficient because there is no justiciable controversy concerning the Proposed Amendment. Plaintiff effectively concedes that there has been no actual breach by seeking declaratory relief as a means of "preventative justice."[37] It is true that the Delaware Declaratory Judgment Act "enables the courts to advance the stage at which a matter traditionally would have been justiciable,"[38] and "[p]arties to a contract can seek declaratory judgment to determine 'any question of construction or validity' and can seek a declaration of 'rights, status or other legal relations

---

declaration of covenants, easements, and restrictions was "contractual in nature"); *see also First Fed. Sav. & Loan Ass'n of Charleston v. Bailey*, 450 S.E.2d 77, 79 (S.C. Ct. App. 1994) ("Covenants requiring the payment of maintenance assessments are contractual in nature and bind the parties to the covenants in the same manner as other contracts."). Plaintiff seems to concede as much in its brief. *See* Pl.'s Answering Br. at 39 ("A declaration is a contract between a homeowner and a maintenance corporation." (quoting *Kirkwood Knoll Maint. Corp. v. Warren*, 2016 WL 8999315, at *5 (Del. Com. Pls. Apr. 21, 2016)).

[37] *See* Pl.'s Answering Br. at 29.

[38] *Energy P'rs, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *6 (Del. Ch. Oct. 11, 2006).

thereunder.'"[39]  Yet "[a]n actual controversy must exist for declaratory judgment jurisdiction."[40]  For an "actual controversy" to exist, the following prerequisites must be met:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[41]

19.    "Generally, a dispute will be deemed ripe if litigation sooner or later appears to be unavoidable and where the material facts are static."[42]  A claim is not ripe "if the action requires the occurrence of some future event before the action's factual predicate is complete," unless "the probability of that future event occurring is real and substantial, of sufficient immediacy and reality."[43]

---

[39] *Id.* (quoting 10 *Del. C.* § 6502).  Under the Declaratory Judgment Act, "[a] contract may be construed either before or after there has been a breach thereof."  10 *Del. C.* § 6503.

[40] *Energy P'rs*, 2006 WL 2947483, at *6 (citing *Gannett Co. v. Bd. of Managers of the Del. Crim. Just. Info. Sys.*, 840 A.2d 1232, 1237 (Del. 2003)).

[41] *XL Specialty Ins. Co. v. WMI Liquid. Tr.*, 93 A.3d 1208, 1217 (Del. 2014).

[42] *Id.* (internal quotation marks omitted).

[43] *See Energy P'rs*, 2006 WL 2947483, at *7 (holding that an actual controversy can exist where a plaintiff demonstrates "the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (quoting *Anonymous v. State*, 2000 WL 739252, at *4 (Del. Ch. June 1, 2000) (internal quotation marks omitted))).

10

20.	Here, the claim is not ripe because Plaintiff has not pled facts sufficient to show the probability of a future event occurring. This court "will not entertain suits seeking an advisory opinion or an adjudication of hypothetical questions."[44] Plaintiff argues that this claim "is based on an actual controversy that is not resolved, and is likely to recur in the future,"[45] but the facts alleged give rise to the opposite inference. The Amended Complaint alleges that the Board proposed but never took action on the amendment, tried to reach a resolution, and, when that failed, resolved that it would not pursue the Proposed Amendment.[46] Plaintiff effectively asks the

---

[44] *Leonard Loventhal Acct. v. Hilton Hotels Corp.*, 2000 WL 15228909, at *10 (Del. Ch. Oct. 10, 2000); *see also Stratton v. Am. Indep. Ins. Co.*, 2010 WL 3706617, at *9 (Del. Super. Sept. 16, 2010) (holding that, in determining ripeness of a claim, "the Court must ask: can this controversy be resolved without engaging in a series of hypothetical scenarios?"); *Crowhorn v. Nationwide Mut. Ins. Co.*, 2002 WL 1767529, at *9 (Del. Super. July 10, 2002) ("To obtain a declaratory judgment '[t]here must be *in existence* a factual situation giving rise to immediate, or about to become immediate, controversy *between the parties*.'" (alteration in original) (quoting *Ackerman v. Stemerman*, 201 A.2d 173, 175 (Del. 1964)).

[45] Pl.'s Answering Br. at 33.

[46] Plaintiff cites to *Bank of Delaware v. Allstate Insurance Co.* for the proposition that "[t]he mere existence of a cloud of denial of right, assertion of unsound claim, existence of conflicting claims, or uncertainty or insecurity occasioned by new events creates a cause of action for declaratory judgment." *Id.* at 30 (quoting 448 A.2d 231, 233 (Del. Super. 1982)). But that case involved an insurance contract, where the denial of a "claim" on insurance standing alone creates an actionable wrong, and the language that Plaintiff quotes is a direct quote from an insurance law treatise. *See Bank of Del.*, 448 A.2d at 233. Plaintiff also relies on *Delaware Building & Construction Trades Council, AFL-CIO v. University of Delaware* for the proposition that "voluntary compliance does not *ipso facto* resolve all disputes." *See* Pl.'s Answering Br. at 35 (quoting 2015 WL 884058, at *5 (Del. Super. Feb. 20, 2015)). This proposition is true in a general sense, but does not overcome Plaintiff's ripeness deficiencies in this case. Further, that case involved a situation in which

11

court to determine whether an abandoned idea would be compliant with Section 7.3.3.3. Plaintiffs have not pled facts from which the court can infer the probability of a future event occurring, so there is no actionable controversy under Delaware law. Count I is therefore dismissed.

21. Count II challenges the Proposed Amendment under a fiduciary duty theory. It is deficient because Plaintiff does not appear to desire to sue the individual defendants.[47] More problematic, what Plaintiff casts as a fiduciary claim in Count II is, in substance, a claim to enforce Section 7.3.3.3. A fiduciary duty claim "may not proceed in tandem with [a] breach of contract claim[] absent an 'independent basis for the fiduciary duty claim[] apart from the contractual claim[].'"[48] That is to say, where fiduciary claims are duplicative of contractual claims, it is appropriate to dismiss the former.[49] In addition, the Amended Complaint makes no meaningful effort to plead facts sufficient to show that Defendants actually breached any duty of care or loyalty in proposing the amendment (and then abandoning it). Count II is therefore dismissed.

---

"there [was] evidence of past non-compliance." *Id.* at *3. Plaintiffs have not pled past noncompliance by Defendants.

[47] *See supra* note 3.

[48] *MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *8 (Del. Ch. May 10, 2018) (quoting *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 394011, at *7 (Del. Ch. Jan. 29 2015)).

[49] *See, e.g.*, *id.*

22.     Count III recasts its challenge to the Proposed Amendment, arguing that the newly proposed Section 5.2.6 is invalid because it is designed to circumvent Section 7.3.3.3.[50] Like Count I, Count III is deficient because there is no justiciable controversy concerning the Proposed Amendment. Count III is therefore dismissed.

23.     Count IV seeks injunctive relief requiring Defendants to operate the Villages in a manner consistent with the Declaration. To obtain a permanent injunction, Plaintiff must demonstrate success on the merits of its claims, among other things.[51] As discussed above, Plaintiff has not succeeded on the merits because Counts I through III of the Amended Complaint fail to state a claim on which relief can be granted. Thus, Plaintiff's request for injunctive relief lacks a valid predicate. Count IV is therefore dismissed.[52]

---

[50] Plaintiff also argues in connection with Count III that Defendants' conduct amounted to anticipatory breach of contract. *See* Pl.'s Answering Br. at 37–42. As Plaintiff acknowledges, anticipatory breach "is a manifestation by one party to a contract of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has by then rendered full and complete performance." Pl.'s Answering Br. at 39 (quoting *Horizon Pers. Comm'ns, Inc. v. Sprint Corp.*, 2006 WL 2337592, at *25 (Del. Ch. Aug. 4, 2006)). Defendants did not manifest an intent not to perform. Defendants did the opposite—they passed a Resolution stating that they had no intent to pass the Proposed Amendment. *See* Resolution. Defendants' conduct therefore did not amount to anticipatory breach.

[51] *See Sierra Club v. Del. Dept. of Nat. Res. & Env't Control*, 919 A.2d 547, 555 (Del. 2007).

[52] In briefing, Plaintiff argues that it has met the standard for seeking a preliminary injunction, which asks whether Plaintiff has "a reasonable probability of success on the merits." Pls.' Answering Br. at 50 (quoting *Rowe v. Everett*, 2000 WL 1655233, at *5 (Del. Ch. Oct. 25, 2000)). The standard, which is not the appropriate standard to apply at

## CONCLUSION

24.    For the foregoing reasons, Defendants' motion to dismiss is granted.

*/s/ Kathaleen St. J. McCormick*
Vice Chancellor Kathaleen St. J. McCormick
Dated:  November 13, 2020

---

this stage, also cannot be met because the Amended Complaint fails to state a claim on which relief can be granted for the reasons set forth in this Order.