**Haji WAZIR, et al., Petitioners,**

v.

**Robert GATES, et al., Respondents.**

**Civil Action No. 06–1697.**

United States District Court,
District of Columbia.

June 29, 2009.

Tina Monshipour Foster, International Justice Network, Bayside, NY, Barbara J. Olshansky, Kathleen A. Kelly, Stanford University Law School, International Human Rights Clinic, Stanford, CA, for Petitioners.

Jean Lin, John Caviness O'Quinn, U.S. Department of Justice, Washington, DC, for Respondents.

## MEMORANDUM OPINION

JOHN D. BATES, District Judge.

Haji Wazir, an Afghan citizen, is being detained by the United States at the Bagram Theater Internment Facility at Bagram Airfield, Afghanistan. On September 29, 2006, Wazir filed a petition for a writ of habeas corpus, and respondents then filed a motion to dismiss for lack of jurisdiction on October 3, 2008. Respondents had filed similar motions to dismiss three other habeas petitions filed by Bagram detainees, and on November 17, 2008, the four cases were consolidated for argument. This Court heard oral argument from the parties on January 7, 2009.

On April 2, 2009, the Court denied respondents' motion to dismiss the petitions filed by the other three Bagram detainees but deferred ruling on respondents' motion to dismiss the petition filed by Wazir. See *Al Maqaleh v. Gates*, 604 F.Supp.2d 205 (D.D.C.2009). Applying the multi-factor test set forth by the Supreme Court in *Boumediene v. Bush*, —— U.S. ——, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008), this Court reasoned that the other three petitioners, none of whom are Afghan citizens, are entitled to invoke the Suspension Clause of the Constitution, Art. I. § 9 cl. 2. Hence, the Court concluded, § 7(a) of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109–366, 120 Stat. 2600, which deprives courts of jurisdiction to entertain habeas petitions filed by individuals designated by the President as "enemy combatants," is unconstitutional as applied to those three petitioners. As to Wazir, however, the Court determined that "there is a real possibility of friction with the Afghan government with respect to Afghan detainees." 604 F.Supp.2d at 229. In balancing the *Boumediene* factors, this possibility of friction was sufficiently weighty to defeat Wazir's claim that he is entitled to invoke the protections of the Suspension Clause. *Id.* at 231.

Having rejected Wazir's Suspension Clause argument, the Court considered "four other grounds to deny respondents' motions to dismiss: the MCA constitutes a usurpation of the Judiciary's Article III powers; the MCA amounts to a permanent suspension of the writ of habeas corpus; the jurisdiction-stripping provisions of the MCA do not apply to [Wazir]; and respondents are violating [Wazir's] rights under constitutional, statutory, and international law." *Id.* at 232. The Court rejected the three latter grounds. *Id.* at 233–35. As to the first ground, however, the Court found the briefing inadequate to permit a reasoned conclusion. *Id.* at 233. The Court therefore ordered further briefing on this issue. In particular, the Court ordered further briefing as to whether MCA § 7 violates the principles set out in *United States v. Klein*, 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871).

*Klein* arose after the Civil War. In 1863, Congress passed a law allowing individuals whose property was seized during the Civil War to recover their property (or receive compensation for it) upon a showing of loyalty. In *United States v. Padelford*, 76 U.S. (9 Wall.) 531, 19 L.Ed. 788 (1869), the Supreme Court held that proof of a presidential pardon was sufficient to prove loyalty. Klein, whose property had been seized during the Civil War but who had since been pardoned, then filed suit in the Court of Claims and successfully recovered his property. The government appealed, and as the appeal was pending before the Supreme Court, Congress passed a new statute. The new law provided that proof of a presidential pardon did not show *loyalty*, but instead was conclusive proof of *disloyalty*, and proof of a pardon would divest courts of jurisdiction.

The Supreme Court held that the statute was unconstitutional. The Court recognized that Congress has authority to

control the appellate jurisdiction of the Supreme Court, but held "that Congress has inadvertently passed the limit which separates the legislative from the judicial power." 80 U.S. at 147. By declaring that pardons were not, as the Court had previously found, proof of loyalty, but instead were conclusive proof of disloyalty, Congress had "prescribe[d] rules of decision to the Judicial Department of the government in cases pending before it." *Id.* at 146. The Court also held that by "impairing the effect of a pardon," the statute "infring[ed] the constitutional power of the Executive." *Id.* at 147.

Whether MCA § 7 violates *Klein* and its progeny is the only remaining issue. The Court previously considered all of Wazir's other arguments and, for the reasons stated in the April 2 memorandum opinion, found them insufficient to defeat respondents' motion to dismiss. Because the Court now finds Wazir's argument under *Klein* unavailing for the reasons below, respondents' motion to dismiss Wazir's habeas petition will be granted.

### ANALYSIS

 The issue before the Court is whether MCA § 7 violates the separation of powers principle set out in *Klein* and is therefore facially unconstitutional. A statute can potentially run afoul of *Klein* in two ways. First, Congress may not pass a statute "infringing the constitutional power of the Executive." *Klein,* 80 U.S. at 147; *see also United States v. Sioux Nation of Indians,* 448 U.S. 371, 404, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) (interpreting scope of *Klein* ). MCA § 7, if anything, *enhances* the Executive's role, and hence this aspect of *Klein* is not at issue here. Second, a statute violates *Klein* if it "prescribe[s] a rule of decision in a case pending before the courts." *Sioux Nation,* 448 U.S. at 404, 100 S.Ct. 2716. It is this second aspect of *Klein* that forms the basis of petitioner's challenge. And, in analyz-

ing this prong of *Klein,* respondents do not argue that petitioner's case was not pending when the MCA was enacted. *See* Resps.' Br. at 9 & n. 3. The only question, then, is whether MCA § 7 unconstitutionally prescribes a "rule of decision."

A "rule of decision" is defined as a "statute . . . that provides the basis for deciding or adjudicating a case." *Black's Law Dictionary* 1359 (8th ed. 2004). The only "rule of decision" that the Supreme Court has rejected as unconstitutional under *Klein* was the statute at issue in *Klein* itself. There, as discussed above, Congress enacted a new statute providing that a presidential pardon was not equivalent to proof of *loyalty,* as the Supreme Court had previously held, but was in fact proof of *disloyalty. See Klein,* 80 U.S. at 145. If, on appeal from the Court of Claims, the Supreme Court determined that a claimant had provided a presidential pardon as proof of loyalty, then the statute required the Supreme Court to dismiss the case for lack of jurisdiction. *Id.*

The Supreme Court significantly altered the scope of *Klein* in *Robertson v. Seattle Audubon Society,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). At issue in *Robertson* was a statute enacted while two cases were pending in the lower federal courts. The pending cases challenged proposed timber harvesting in the Pacific Northwest. In response to the litigation, Congress passed an appropriations act containing a clause providing that "Congress hereby determines and directs that management of areas according to [other subsections of the statute] is adequate consideration for the purposes of meeting the statutory requirements that are the basis for the [pending litigation]." 503 U.S. at 434–35, 112 S.Ct. 1407. The defendants sought dismissal based on the new statute, and plaintiffs argued that it violated *Klein.* Although the district court rejected plain-

tiffs' argument, the Ninth Circuit reversed, holding that the statute "directs the court to reach a specific result and make certain factual findings." *Seattle Audubon Soc'y v. Robertson*, 914 F.2d 1311, 1316 (9th Cir.1990).

The Supreme Court granted certiorari and unanimously reversed. The Court concluded that the statute at issue "replaced the legal standards underlying the two original challenges ... without directing particular applications under either the old or new standards." 503 U.S. at 437, 112 S.Ct. 1407. In other words, the statute "compelled changes in law, not findings or results under old law." *Id.* at 438, 112 S.Ct. 1407. While some have argued that this interpretation in fact overruled *Klein*,[1] most scholars and courts interpret *Robertson* to have narrowed *Klein* so that it applies only when Congress directs courts how to apply existing laws, but not when Congress adopts a new law. *See* Erwin Chemerinksy, *Federal Jurisdiction* § 3.2 (5th ed. 2007); *Nat'l Coalition to Save Our Mall v. Norton*, 269 F.3d 1092, 1097 (D.C.Cir.2001).

▆ Under *Klein*, as interpreted by *Robertson*, petitioner's argument fails. MCA § 7 does not direct courts how to apply existing laws. Nor does it command courts to find that certain petitioners are or are not "enemy combatants." Rather, it amends the applicable substantive law— 28 U.S.C. § 2241—to strip courts of jurisdiction for petitioners detained as "enemy combatants." And when a statute merely "amends the applicable substantive law," it does not violate *Klein*. *See Save Our Mall*, 269 F.3d at 1097; *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) ("Whatever the precise scope of *Klein* ...

later decisions have made clear that its prohibition does not take hold when Congress 'amends applicable law.'") (quoting *Robertson*, 503 U.S. at 441, 112 S.Ct. 1407); *Jung v. Ass'n of Am. Medical Colleges*, 184 Fed.Appx. 9, 12 (D.C.Cir.2006) ("Congress may amend substantive laws, even when doing so affects pending litigation.") (citing *Robertson*, 503 U.S. at 438, 112 S.Ct. 1407).

Other statutes that have been upheld under *Klein* and *Robertson* further demonstrate that MCA § 7 does not violate *Klein*. The statute at issue in Jung, for example, is instructive. There, as an antitrust suit challenging the National Resident Matching Program was pending, Congress passed a law exempting the matching program from the antitrust laws and "bar[ring] evidence of any participation in such programs in support of a claim in federal court that antitrust laws have been violated." 184 Fed.Appx. at 11. The law expressly applied to pending suits. *Id.* Under the new statute, the case was dismissed. On appeal, the D.C. Circuit rejected plaintiff's argument under *Klein* and *Robertson*, holding that "Congress has done nothing more here than amend the antitrust laws by carving out a safe harbor for participation in [the Matching Program]." *Id.* at 12.

*Klein*, then, is a narrow holding as interpreted in subsequent cases. As respondents point out, *Klein* is rarely (if ever) successfully invoked in constitutional challenges to federal statutes. Respondents aver that since *Klein* was decided in 1871, the Supreme Court has never declared a federal statute unconstitutional under *Klein*. Resps.' Br. at 5. Indeed, respondents contend—without contradiction— that only two courts of appeals have over-

---

1. *See, e.g.,* Amy D. Ronner, *Judicial Self-Demise: The Test of When Congress Impermissibly Intrudes on Judicial Power after Robertson v. Seattle Audubon Society and the Federal*

*Appellate Courts' Rejection of the Separation of Powers Challenges to the New Section of the Securities Exchange Act of 1934*, 35 Ariz. L. Rev. 1037, 1048–55 (1993).

turned federal statutes under *Klein*, and that both courts were later reversed by the Supreme Court. *Id.* (citing *Seattle Audubon Soc'y v. Robertson*, 914 F.2d 1311 (9th Cir.1990), and *French v. Duckworth*, 178 F.3d 437 (7th Cir.1999)). In the end, *Klein* offers no aid to Wazir in his challenge to MCA § 7.

Although this Court ordered further briefing only on the *Klein* issue, petitioner invokes several cases that address other separation of powers principles. For example, petitioner repeatedly cites to *Plaut*. *See* Pet'r's Resp. at 3, 5, 6. Although *Plaut* briefly addressed *Klein* (and, in fact, underscored the narrowing impact of *Robertson*), the separation of powers principle animating that case is not at issue here. There, the question was whether Congress may re-open a final judgment issued by a court. *See Plaut*, 514 U.S. at 218, 115 S.Ct. 1447. MCA § 7 has nothing to do with re-opening final judgments rendered by courts. *Plaut*, then, does not help petitioner's case.

Petitioner also cites to *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). Although *Gutierrez* does not interpret or apply *Klein* (indeed, it only cites *Klein* once, and then with a "*cf.*" signal), the separation of powers principles addressed there merit some examination. *Gutierrez* was a tort lawsuit brought against a federal employee, and at issue was a statute permitting the Attorney General to certify whether the employee was acting within the scope of his employment at the time of the allegedly tortious behavior. *Id.* at 421–22, 115 S.Ct. 2227. If the defendant-employee was acting within the scope of his employment, then the United States would be substituted as the defendant and certain immunities could apply. *Id.* The Attorney General had certified that the defendant-employee was acting within the scope of his employment, and once the

United States was substituted as the defendant, the United States claimed sovereign immunity under the Federal Tort Claims Act. The plaintiff challenged the statute on separation of powers grounds, arguing that the key threshold determination—whether an employee was acting within the scope of his employment—was made by the Executive with no judicial review. The Supreme Court recognized that such a provision could be problematic because it "would cast Article III judges in the role of petty functionaries, persons required to enter as a court judgment an executive officer's decision, but stripped of capacity to evaluate independently whether the executive's decision is correct." *Id.* at 426, 115 S.Ct. 2227. Despite such sweeping language, however, *Gutierrez* nonetheless held that threshold determinations *may* be committed to the Executive if Congress clearly intended that result. *Id.* at 424–25, 115 S.Ct. 2227; *see also Johnson v. Robison*, 415 U.S. 361, 368–69, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (upholding statute that forbid judicial review of threshold determinations by the Administrator of the Department of Veterans' Affairs because the constitutionality of the statute itself was subject to challenge). The Supreme Court then analyzed whether Congress's intent was clear and found that it was not. *Gutierrez*, 515 U.S. at 430–34, 115 S.Ct. 2227.

The wrong complained of by the plaintiff in *Gutierrez* is the same as that complained of by petitioner here: the threshold question—whether a detainee is an "enemy combatant"—is answered by the Executive with no opportunity for judicial review. But unlike the statute at issue in *Gutierrez*, Congress's intent to make the Executive's "enemy combatant" determination unreviewable is plain. As is clear from the statutes passed and cases decided before the Supreme Court decided *Boumediene*, Congress intended to deprive courts of jurisdiction over habeas petitions filed

by detainees determined to be "enemy combatants" by the President. *See Al Maqaleh,* 604 F.Supp.2d at 212 (recounting history leading to *Boumediene* ). Hence, although *Gutierrez* contains abundant dicta aiding petitioner's argument, *Gutierrez's* actual holding does not advance petitioner's case.

■ Finally, petitioner resurrects several arguments the Court previously considered and addressed in its April 2 opinion. *See, e.g.,* Pet'r's Resp. at 10–12 (re-arguing the "friction with the host government" factor of the *Boumediene* test); *id.* at 12–13 (re-arguing that MCA § 7 constitutes a permanent suspension of the writ). To support these arguments, he presents new facts as well. Insofar as petitioner is asking this Court to reconsider or alter its April 2 judgment, however, he makes no effort to meet the standards set forth by the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 59(e), 60(b). Absent a motion for reconsideration or a motion to amend or alter judgment, the Court will not reconsider its April 2 opinion at this time.[2]

In sum, MCA § 7 does not violate separation of powers under *Klein,* as interpreted by *Robertson* and subsequent decisions. Nor do the other separation of powers doctrines invoked by petitioner facially defeat MCA § 7. Because the *Klein* question was the only remaining issue preventing this Court from granting respondents' motion to dismiss petitioner Wazir's habeas petition, and because the Court finds in favor of respondents on that issue, respondents' motion to dismiss will be granted. A separate order accompanies this opinion.

**SO ORDERED.**

---

2. Hence, the Court expresses no view on the merits of petitioner's resurrected arguments.